LANE, Comptroller, v. SCHULTZ & BUSS.

(Court of Civil Appeals of Texas. San Antonio. Nov. 22, 1911. Rehearing Denied April 24, 1912.)

1. INTOXICATING LIQUORS (§ 15*)—STATUTORY PROVISIONS—CONSTITUTIONALITY.

Acts 31st Leg. 1st Ex. Sess. c. 17, which regulates the sale of intoxicating liquors and confers upon the Comptroller of Public Accounts power to revoke a retail liquor dealer's license for a violation of the liquor law, is constitutional.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*]

2. INTOXICATING LIQUORS (§ 108*) — STATUTORY PROVISIONS—REVOCATION OF LICENSE.

Under Acts 31st Leg. 1st Ex. Sess. c. 17, § 9h, which provides that any person feeling himself aggrieved by the action of the Comptroller of Public Accounts in revoking a license may bring suit in the district court of the county of his residence to reinstate such license, the right to relief from the acts of the Comptroller is limited by the act except where an act of the Comptroller is outside of his granted powers.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*]

3. INJUNCTION (§ 105*)—CRIMINAL PROSECUTIONS—VIOLATION OF LIQUOR LAW.

Equity will not ordinarily entertain a bill to enjoin a criminal prosecution, so that where liquor dealers claimed that the Comptroller of Public Accounts and county judge were keeping them from carrying on their business under a valid license by threats of criminal prosecution, etc., an injunction will not lie to restrain the Comptroller and judge, as the right to do business under the license may be determined in the criminal proceeding, if brought.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. § 105.*]

4. INJUNCTION (§ 34*)—REVOCATION OF LICENSE—PROPERTY RIGHT.

A liquor dealer has no property right in a liquor license which will entitle him to enjoin the Comptroller and county court from proceeding against him criminally for carrying on his business under a void license.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 74–81; Dec. Dig. § 34.*]

5. ESTOPPEL (§ 62*)—AGAINST STATE—REVOCATION OF LICENSE.

Estoppel cannot be invoked against the state or its officers in the enforcement of the criminal law, so that injunction will not issue to restrain a Comptroller and county court from questioning the validity of a liquor dealer's license in criminal proceedings, on the ground that prior acts create an estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153; Dec. Dig. § 62.*]

Appeal from District Court, Victoria County; John M. Green, Judge.

Injunction by Schultz & Buss against W. P. Lane, Comptroller. From writs granted, upon a preliminary application and hearing, defendant appeals. Reversed, and injunctions set aside.

Jewel P. Lightfoot and C. E. Mead, both of Austin, for appellant. Ben W. Fly, of Victoria, for appellee.

JAMES, C. J. This is an appeal from writs of injunction granted upon a preliminary application and hearing.

The petition of Schultz & Buss alleged: That prior to July 11, 1911, they were liquor dealers in Victoria under a license duly issued to them on July 11, 1910, for the term of one year. That about May 1, 1911, appellant, the Comptroller, issued his commission to a notary in Victoria, which stated that he had received information that on or about April 1, 1911, Schultz & Buss had sold liquor to minors, and commanded him to take the testimony of witnesses in reference thereto and to forward same to him. That the notary took depositions accordingly on June 21, 1911, the plaintiffs being present and introducing testimony to show that they were not guilty of the charge, and forwarded same to the appellant, Comptroller. That from that time on plaintiffs besought appellant by telegrams and letters to make a decision upon said testimony, being anxious to know the result in view of the fact that their license would expire on June 11th, and they desired to have a new license if permitted. That under these circumstances they, on June 6th, made due application to appellant, Comptroller, for a permit for a new license to begin June 11th, and appellant, on June 12th, issued such permit, which certified that he was satisfied that the appellants were not disqualified from engaging in such business, and applicant, relying thereon, duly applied to the county judge on July 13, 1911, for a license, attaching said permit to their application. That on May 5, 1911, plaintiff Buss was indicted by the grand jury for having unlawfully sold intoxicating liquors to a minor, one Adolf Lenemann, the same person the sale to whom was the subject of the Comptroller's investigation, which indictment was dismissed by the county attorney, whereupon, appellant having persistently failed and neglected to make his order on said investigation, plaintiff had the hearing before the county judge on July 24th, who considered the evidence and the said permit, etc., entered judgment directing that the license be granted, and plaintiffs then paid the several sums required for the license amounting to $750. That plaintiff went on with their business under such license from July 24 to July 31, 1911, when they received by mail a writ dated July 29th, executed by the Comptroller under the seal of his office, which, in substance, stated that on or about June 25, 1911, he received the depositions, and in compliance with law he opened and considered the same, and found that after the issuance of the license granted in 1910 plaintiffs had violated the law in selling to said minor, and that by virtue of the authority vested in him he rescinded, vacated, and withdrew said license issued in 1910. That at the same time appellant furnished

the county judge with a copy of the writ with instructions to see that it was in all things complied with. That as this writ purported to revoke a license that had already expired, the county judge called on appellant for further directions, and on August 4th he received further advice from appellant that Schultz & Buss had been by him put out of business for the next five years, and he was commanded to obey the writ and cause plaintiffs to close and to refrain from pursuing their business. And that the county judge then caused plaintiffs to close with threats of criminal prosecution.

The petition then sets forth that plaintiffs have in their place of business a stock of liquors and cigars and furniture, worth $2,-500, and were enjoying a lucrative business; that they have at no time violated any law regulating the business, and denied specifically the charge of selling to the minor, Lenemann; that the depositions taken at the instance of appellant fail to show any such violation; and that appellant's action in annulling the license and refusing to permit them to longer engage in the business is "vicious, arbitrary, unjust, and wholly unwarranted by the law and the facts and should be by the court set aside and plaintiffs' license reinstated and authority granted them to continue their business." The petition then alleges that, if not allowed to continue their business until the court's next regular term, their goods would deteriorate and part of it become useless, and their trade would be swept away, to their irreparable injury, and plaintiffs put to expense for house rent, storage of goods, insurance, etc., in the sum of $25 per month; that appellant in annulling the license of plaintiffs for an act charged by him to have been committed prior to the issuance of same, and which forfeiture was declared subsequent to the issuance of appellant's permit, which stated that he was satisfied that neither of plaintiffs was disqualified, etc., has perpetrated a fraud upon plaintiffs and caused them to apply for the new license and pay $750 license money; and plaintiffs allege the fact to be that appellant knowingly and willfully, and with corrupt and fraudulent purpose of depriving plaintiffs of their money, withheld his action upon the investigation he had instituted, in order to trick plaintiffs into paying said money for a new license, a large part of which is in the state treasury and beyond their reach and beyond the reach of the courts, and he should therefore be held estopped. The rest of the petition attacks the act of the Legislature under which appellant claims to have authority to act in the premises, as being in violation of the Constitution of the United States and of the state of Texas, and concludes with a prayer for writs of injunction restraining appellant and the county judge from interfering with plaintiffs and their business under the license is-

sued to them on July 24, 1911, until the final hearing of the cause, and that a mandatory writ of injunction be issued requiring appellant, Comptroller, to withdraw his writ of July 29, 1911, and his instructions to the county judge in connection with said writ, and that upon final hearing said writs of injunction be made perpetual, and further that they have judgment against the defendant, Comptroller, annulling and vacating his said writs issued against them and reinstating their said license and fully authorizing them to pursue their business under it, and for costs and general relief.

A hearing was had in vacation, and the temporary writs of injunction were granted and issued as prayed for. From this action of the court the appeal is taken.

The statement of facts shows that the facts substantially as stated in the petition were agreed to for the purposes of the hearing, except the allegations to the effect that the Comptroller willfully and purposely issued the permit of date June 12, 1911, knowing that he expected to cancel the license of plaintiffs.

The order made by the court contains the judge's conclusions, from which it appears he based his action, in granting the temporary writs, upon substantially the conclusions from the evidence: (1) That the Comptroller, in holding the testimony taken at his instance for five weeks or more after it reached his hands and until after plaintiffs had acquired their new license on July 24, 1911, was grossly negligent in the performance of the duty he owed plaintiffs, and delayed for a much longer than a necessary or reasonable time, and whether or not he had an actual intention to defraud, his conduct amounted to fraud in law and worked great hardship, damage, and irreparable injury upon plaintiffs; and (2) that when he issued the permit of June 12, 1911, wherein he certified that he was satisfied that neither of plaintiffs was disqualified under the laws of the state from engaging in such business and granted them permission to apply for a license, he was in possession of information, or at least claimed to be in possession of information, to the effect that they had committed the act for which he afterwards forfeited their license, and that by reason of said permit he induced them to apply, pay for, and receive their license of date July 24, 1911, and it was his duty to withhold said permit upon the faith of the information he claimed to have, and by its issuance he condoned any alleged offense plaintiffs might have committed anterior to the issuance thereof, and by issuing it, and thereafter canceling the license obtained under it, he perpetrated a legal fraud on plaintiffs, and such conduct on his part brought him within the rule of equitable estoppel, and to permit him now to cancel, vacate, or withdraw the same would constitute a fraud on

plaintiffs, and he should not be permitted to repudiate the permit issued by him.

[4] The statute of 1909 regulating the sale of intoxicating liquors (Laws of 1909, p. 293) confers upon the Comptroller power to revoke a retail liquor dealer's license in a certain manner, which is by means of a commission to take testimony, which depositions, when returned to him, he shall open and proceed to consider, and if therefrom he shall determine that, at any time after the issuance of the license, the violation charged was committed, he shall rescind, vacate, and withdraw said license, that it shall be unlawful thereafter for such person or persons to continue the business, and any attempt to do so shall subject him or them to the penalty prescribed for pursuing such business without a license.

We overrule the contentions made in this case questioning the constitutionality of said statute.

The said act, in section 9h, provides: "That any person feeling himself aggrieved by the action of the Comptroller in vacating, annulling and rescinding such license under this act may bring suit in the district court of the county of his residence in Texas against the Comptroller to reinstate such license, but the business conducted under such license shall be suspended during the pendency of such suit and shall not be reopened unless the order of the Comptroller shall be set aside by final judgment of the proper court, but if such order shall be by a final judgment set aside, then such licensee shall have the right to pursue such occupation under such license without paying any additional tax for a period to be added to the time of the license equal to the time his right to do business was suspended."

The facts are not disputed. During the life of the license to plaintiffs, issued on July 10, 1910, for one year, the Comptroller, about April 1, 1911, proceeded, under the power he had, to issue a commission to take the testimony of witnesses on the charge that plaintiffs had sold liquors to a certain minor. The depositions were returned to his office by the notary about June 25th. He held the depositions and did not act on them until after the license he was proceeding to forfeit had expired, and he did not issue his order or writ forfeiting said license until July 29, 1911, after another license had been issued to plaintiffs and they were doing business thereunder. It appears that plaintiffs early in June made application to the Comptroller for a permit to apply for a license to engage in the business for the year beginning July 11, 1911, and the Comptroller issued them such permit on June 12, 1911, in which it was certified that he was satisfied that neither of the applicants was disqualified from engaging in such business, and that plaintiffs made application to the county judge for a license on July 13th, attaching

said permit to their petition, and the county judge, on considering the same according to the statute, entered his judgment on July 24, 1911, authorizing and directing that such license be granted, and on same day plaintiffs paid the required license money and received their license for a period of one year beginning on said date.

On July 29, 1911, the Comptroller issued his writ or order to the county judge, stating therein that on or about June 25, 1911, he received the said depositions, that he opened and considered same, and found that Schultz & Buss, on or about April 1, 1910, had violated the law by selling liquor to Adolph Lenemann, a minor, and that by virtue of the authority vested in him he rescinded, vacated, and withdrew the license issued to Schultz & Buss in the year 1910, and directed the county judge to see that the writ was in all things complied with. The county judge wrote to the Comptroller for further instructions on the subject, as said writ purported to revoke a license that had already expired. The Comptroller then informed him that Schultz & Buss had been put out of the liquor business for the next five years, and commanded him to obey the order contained in the writ and to cause plaintiffs to close their place of business and refrain from further pursuing the same, and thereupon the county judge ordered plaintiffs to close their business and to remain closed, under threats of criminal prosecution, and plaintiffs closed and instituted this suit.

[2] The first contention of appellant is that by section 9h of the act of 1909 (above quoted), the Legislature provided a particular and exclusive remedy for plaintiffs, if they felt aggrieved at the action of the Comptroller in revoking and annulling their license, and that, as under that section no relief is allowed, except in a suit instituted by them in the district court, to reinstate their license, and then only by a final judgment in such case, the grant of the temporary writs appealed from was unauthorized, in fact forbidden. This proposition is sound in all cases where the Comptroller has acted within the powers given him by the act. But otherwise, where his act cannot be referred to any power conferred on him.

The Comptroller proceeded upon the theory that the consequence of his declaration of forfeiture of a previous license was to put plaintiffs out of business for five years; hence, notwithstanding they had been granted a new license, they were unlawfully prosecuting their business, and subject to prosecution for the offense of carrying on the business without a license.

It must be borne in mind that what we are called on to decide by this appeal is whether or not there was error in granting the temporary injunctions—nothing else.

It is clear that, if the action of the Comptroller which is complained of was one that

can be referred to the execution of the powers granted him by the act, the proceeding prescribed by section 9h was the sole remedy that plaintiffs had to set it aside, and no preliminary injunction could be granted them, because that section, in effect, forbids it by providing that they should have no such relief except by final judgment in the cause. If, however, the action of that official was outside of any authority or power conferred on him by the act, it would have no better standing than if done by an individual, and the remedy provided by said act would not be applicable.

[3] What is complained of by the petition, as the basis for relief, is that the county judge, acting at the instance of the Comptroller, was proceeding by threats of criminal proceedings to prosecute plaintiffs on a charge of pursuing their liquor business without a license. This brings us directly to the question whether or not a court of equity will grant an injunction to stay such criminal prosecution. The rule is that equity will not entertain a bill brought for the purpose of enjoining a criminal prosecution. This rule is not without its exceptions, and this subject is dealt with in High on Injunctions (4th Ed.) § 68, as follows: "If, however, the act, concerning which an arrest or criminal prosecution is threatened, affects civil property and its enjoyment, in protecting the property right, equity may properly enjoin the criminal prosecution. But in such cases its interference is founded solely upon the ground of injury to property and the necessity of preserving property rights."

Plaintiffs were doing business under a license granted them, and what they complain of is that the Comptroller and county judge were molesting them by threats of criminal prosecution for carrying on the business without a license. The foundation of their position is that they had a valid license, and that the acts of said officers, primarily the action of the Comptroller, were, under the circumstances, without warrant of law and void. We are satisfied that plaintiffs' right to do business under said new license can as readily, and more conclusively, be determined in the proposed criminal proceeding, if brought; and that if, as courts of equity, the district courts of the state should assume jurisdiction to grant injunction in this class of cases, and forestall the criminal courts by trying the questions involved, it would be a precedent to practically transferring a large portion of the criminal jurisdiction to the civil docket, where it does not belong.

[4] Another very important consideration is that it would have to be held, in order to support the jurisdiction to grant injunction, that as between the state and the liquor dealer the latter has a property right in the license or privilege to carry on the business, and the authorities are agreed that, as against the state, such right does not exist.

It would be useless to pursue the subject further in view of the reasoning of the Supreme Court in Greiner v. Truett, 97 Tex. 377, 79 S. W. 4.

[5] The court, however, granted these injunctions upon the theory that the state was estopped to question the validity of plaintiffs' license. In other words, it would seem, from the conclusions of the court, that the trial judge considered that the Comptroller acted within the purview of the statute, in declaring the forfeiture of the 1910 license after it had expired, and the state was estopped to declare the new license invalid.

If the court so held and was correct in holding that the Comptroller acted within the statute and that the forfeiture declared by the Comptroller was valid, then the only remedy the plaintiffs had was the statutory proceeding provided by section 9h, and that remedy precluded any relief whatever, except by the final judgment in that proceeding.

We are of opinion that the doctrine of estoppel cannot be invoked against the state or its officers in the enforcement of its laws, particularly the criminal laws, affecting the traffic in intoxicating liquors. Bigelow on Estoppel (5th Ed.) p. 341. A license issued to conduct such business is not in any sense the acquirement of a property right as against the state, and therefore cannot be recognized as furnishing the basis of an estoppel.

Our conclusions are: (1) That upon the theory that the action of the Comptroller and county judge complained of was within the provisions of the statute, plaintiffs' sole remedy is that given them by section 9h of the act, and the preliminary injunctions were improperly granted; (2) that no right accrued to plaintiffs by estoppel, and an injunction granted upon that ground was improper; and (3) that if the action of the Comptroller, in declaring the forfeiture of the 1910 license when he did, was beyond his authority under the statute, it was improper for the court to grant the injunctions on that ground, for such question, in its bearing on the validity of the new license, could and should be determined in the threatened criminal proceeding, if any should be instituted, and a court of equity should not interfere.

We express no opinion at this time on the question whether or not the new license was rendered void by reason of the forfeiture declared by the Comptroller of the 1910 license. What we decide on this appeal is simply that the temporary injunctions were improperly granted, and further that the only relief plaintiffs can possibly obtain in the proceeding instituted by them in the district court is to have the forfeiture set aside, and this only in the event the trial court should decide on final hearing that what was done by the Comptroller would have the effect, under the provisions of the statute, to annul, revoke, or withdraw the new license.

The judgment granting the temporary injunctions is reversed, and the injunctions set aside.