THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THE BOOTH FISHERIES COMPANY, Plaintiff in Error.

*Opinion filed February 23, 1912.*

1. FISH AND GAME—*legislature may confer upon person taking or killing fish or game such property rights as it sees fit.* The ownership of fish, wild fowls or wild animals is in the State, and the legislature has the right to prohibit the killing or taking of them, or to permit such killing or taking upon such reasonable conditions as it deems just, and to confer upon the person taking or killing them such property rights therein as it deems best, or none at all.

2. SAME—*legislature has power to make law effective by providing against its evasion.* The legislature has the power to enact a law for the preservation and protection of fish in domestic waters, and, having such power, may make such law effective by providing against its evasion, and for that purpose may limit the use of private property to the detriment of the law.

3. SAME—*sections 11 and 12 of Fish and Game law of 1911 apply to fish caught in other States.* Section 11 of the Fish and Game law of 1911, (Laws of 1911, p. 351,) which makes it unlawful, at any time, to sell, offer or expose for sale, or have in possession for the purpose of selling, any black bass, pike, pickerel or pike perch, and section 12, which makes it unlawful, at any time, to transport, ship or take to any point outside this State any black bass, pike, pickerel or pike perch, apply to such fish, whether caught in this State or elsewhere. (*Magner* v. *People,* 97 Ill. 320, followed.)

4. CONSTITUTIONAL LAW—*section 11 of Fish and Game law of 1911 is valid.* Section 11 of the Fish and Game law of 1911 does not prohibit the importation into the State of the kinds of fish therein specified except for the purpose of selling the same or offering for sale, and the fact that it may to that extent indirectly affect inter-State commerce does not render it invalid; nor is it invalid as depriving persons of property without due process of law.

5. SAME—*section 12 of Fish and Game law is invalid as applied to fish shipped into the State.* Section 12 of the Fish and Game law of 1911 is valid in so far as it prohibits the shipping out of this State black bass, pike, pickerel or pike perch which have been caught in this State, but as to such kinds of fish which have been shipped into Illinois the section is invalid, as an unlawful interference with inter-State commerce.

6. SAME—*when laws are valid though they indirectly affect inter-State commerce.* Laws passed by a State in the exercise of its

police power and not in conflict with the acts of Congress on the same subjects are valid laws, even though they may remotely and indirectly affect inter-State commerce.

7. SAME—*State cannot wholly exclude a lawful article of commerce.* A State may, in the exercise of its police power, regulate the introduction of a lawful article of commerce so as to insure its purity, but it has no power to totally exclude a lawful article of commerce produced in another State or country or to prohibit the transportation of the same out of the State, as such action is an unlawful restriction of inter-State commerce.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JOHN R. CAVERLY, Judge, presiding.

WINSTON, PAYNE, STRAWN & SHAW, (JOHN BARTON PAYNE, SILAS H. STRAWN, and WALTER H. JACOBS, of counsel,) for plaintiff in error:

Section 12 of the Fish and Game law is unconstitutional and void. It is in contravention of the fourteenth amendment to the constitution of the United States and of section 2 of article 2 of the constitution of the State of Illinois, in that it deprives the defendant of its property without due process of law, and violates the common rights of the citizen, is unreasonable and is beyond the power of the legislature to enact. *Ritchie* v. *People,* 155 Ill. 98; *Chicago* v. *Netcher,* 183 id. 104; *Frorer* v. *People,* 141 id. 171; *Coal Co.* v. *People,* 147 id. 66; *Silz* v. *Hesterberg,* 211 U. S. 31.

Section 12 is unconstitutional and in contravention of the commerce clause of the constitution of the United States. *In re Davenport,* 102 Fed. Rep. 540; *McDonald* v. *Express Co.* 134 id. 282; *State* v. *Saunders,* 19 Kan. 127; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Schollenberger* v. *Pennsylvania,* 171 id. 1; *Magner* v. *People,* 97 Ill. 320.

The statute does not apply to fish caught outside the limits of the State of Illinois and transported from the State of Illinois to other States. *Commonwealth* v. *Wilkinson,* 139 Pa. St. 298; *People* v. *Fish Co.* 164 N. Y. 93;

*Commonwealth* v. *Hall,* 128 Mass. 410; *People* v. *Booth & Co.* 86 N. Y. Supp. 272.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and CHARLES E. WOODWARD, (ZACH HOFHEIMER, of counsel,) for the People:

The Fish act of 1911 is a proper exercise of the police power of the State, with a clear view to the protection of the fish supply for the use of the inhabitants of the State. *Magner* v. *People,* 97 Ill. 320; *Merritt* v. *People,* 169 id. 219; *Express Co.* v. *People,* 133 id. 649; *Silz* v. *Hesterberg,* 211 U. S. 31.

In *Magner* v. *People,* 97 Ill. 320, it was held the prohibition of the sale of quail in Illinois, even if legally caught in Kansas, was a proper exercise of the police power.

The provision of section 12 making it unlawful to transport, ship or take to any point outside this State any fish of the species of pike, violates no provision of the Federal constitution. *Geer* v. *Connecticut,* 161 U. S. 519.

Section 12 is clear, certain and unambiguous in its terms, and applies with as much force to the transportation to points outside of this State of pike caught and taken beyond the limits of this State as it does to the transportation of pike caught and taken in the waters of this State. *Merritt* v. *People,* 169 Ill. 219; *Magner* v. *People,* 97 id. 320; *Silz* v. *Hesterberg,* 211 U. S. 31.

The prohibition of the transportation to points outside of the State of all pike tends to the protection of pike in the waters under the jurisdiction of this State, and is a reasonable exercise of the police power of the State. *Magner* v. *People,* 97 Ill. 320; *Silz* v. *Hesterberg,* 211 U. S. 31.

Section 12 is not in contravention of the commerce clause of the constitution of the United States. *Geer* v. *Connecticut,* 161 U. S. 519; *Silz* v. *Hesterberg,* 211 id. 31; *Magner* v. *People,* 97 Ill. 320; *Merritt* v. *People,* 169 id. 219; *People* v. *Lassen,* 142 Mich. 597.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, the Booth Fisheries Company, was convicted on four informations in the municipal court of Chicago for violations of the Fish law. (Laws of 1911, p. 348.) By this writ of error it questions the constitutionality and construction of the sections of the statute involved.

Two of the informations charged the defendant with having in its possession, for the purpose of selling, one fish commonly called pike, in violation of section 11, which declares it unlawful "at any time to sell or offer or expose for sale, or have in possession for the purpose of selling, any black bass, pike," etc. The other two informations charged that the defendant transported and shipped from Chicago at one time one hundred and twenty-five pounds of fish commonly called pike, to Mason City, Iowa, and at another time thirty pounds of fish commonly called pike, to Fort Dodge, Iowa, in violation of section 12, which declares it unlawful "at any time to transport, ship or take to any point outside this State, any black bass, pike," etc., with an exception permitting any person to carry with him or transport as baggage, under certain conditions, a certain quantity of fish legally caught in waters under the jurisdiction of this State. The cases were tried by the court without a jury upon stipulations, which were the only evidence offered.

The Booth Fisheries Company is a corporation organized under the laws of Delaware, authorized to do business in this State, having the right, under its charter, to engage in the business of buying and selling fish and oysters, and is actually carrying on that business in Chicago and in various States of the United States and in Canada. The facts claimed to constitute the two violations of section 11 are, that the defendant had in its possession, for the purpose of selling, one pike which was sound, wholesome and fit for human consumption and was caught in the Lake of the

Woods, in the State of Minnesota, and shipped to the defendant from Warroad, Minnesota; and it also had in its possession one pike which was sound, wholesome and fit for human consumption and was caught in Lake Manitoba, in the province of Manitoba, in the dominion of Canada, and was shipped to the defendant from Oak Point, Manitoba.

The facts claimed to constitute one violation of section 12 are, that the defendant, in pursuance of an order from J. F. Stott, of Mason City, Iowa, sold, transported and shipped to him from Chicago, through the Wells-Fargo Express Company, to Mason City, Iowa, one hundred and twenty-five pounds of pike which were sound, wholesome and fit for human consumption, were caught in Lake Manitoba, in the province of Manitoba, in the dominion of Canada, and were shipped to the defendant from Oak Point, Manitoba. These fish were purchased by the defendant for sale in States other than Illinois, and for convenience of transportation, handling and distribution were brought to Chicago and stored in the defendant's cold storage warehouse. At the time of their shipment from Chicago to Mason City, Iowa, they were articles in storage in transit in inter-State commerce. The other case for the violation of section 12 is exactly similar, names, places and quantities being changed, the fish in this case having been caught in the Lake of the Woods, in Minnesota, and shipped to the defendant from Warroad, Minnesota.

The grounds for reversal argued are, that the provisions of sections 11 and 12 do not apply to fish caught outside the State of Illinois, and that if they do so apply, they deprive the plaintiff in error of its property without due process of law, in violation of section 2 of article 2 of the constitution of the State and of the fourteenth amendment of the Federal constitution, and are in violation of clause 3 of section 8 of article 1 of the Federal constitution,—the commerce clause. The first ground would be entitled to serious attention if we were at liberty to consider it as an original

proposition, but we regard the case of *Magner* v. *People,* 97 Ill. 320, as conclusive of this contention. The act there under consideration was a revision of the law in relation to the protection of game, while the act here is a revision of the law in relation to the propagation and protection of fish in all waters under the jurisdiction of this State. The first two sections of that act made unlawful the hunting, killing or taking of certain animals, wild fowls and birds at specified times, and the buying, selling or having in possession for such purpose, during such specified times, any of such animals, wild fowls or birds taken contrary to the provisions of the act. Section 6 then provided that "no person or persons shall sell or expose for sale, or have in his or their possession for the purpose of selling or exposing for sale, any of the animals, wild fowls or birds mentioned in section 1 of this act, after the expiration of five days next succeeding the first day of the period in which it shall be unlawful to kill, trap or ensnare such animals, wild fowls or birds." In the present case the earlier sections of the act make it unlawful to catch or kill certain fish of specified kinds and sizes at certain times and by certain means or devices, or to sell, offer for sale or have in possession such fish so caught or killed. The material parts of sections 11 and 12 have already been quoted. The cases are closely analogous. In the former case the court said: "Section 6 is more comprehensive in its language than either section 1 or section 2. * * * No exception whatever is made with reference to the time when or place where such animals, wild fowls or birds shall have been killed, trapped or ensnared, but the language, as plainly as language can, includes all animals, wild fowls and birds." We regard the construction placed upon language so similar, in a case so nearly the same, as conclusive of the meaning.

There is no property in fish, wild fowls or wild animals until they have been reduced to possession. The ownership of wild game is in the State, and the legislature has

the right to prohibit the killing or taking of it, or to permit such killing or taking, upon such reasonable conditions as it deems just, and to confer upon the person taking or killing it such property rights therein as it thinks best, or none at all.   (*Magner* v. *People, supra; American Express Co.* v. *People,* 133 Ill. 649; *People* v. *Bridges,* 142 id. 30; *Cummings* v. *People,* 211 id. 392; *State* v. *Snowman,* 94 Me. 99; *State* v. *Lewis,* 134 Ind. 250; *Geer* v. *Connecticut,* 161 U. S. 519.)   In these and many other cases the power of the State to regulate, for their preservation and protection, the time, place, manner and condition of taking game and fish has been recognized and it is conceded by the plaintiff in error.   The statute permits the taking of fish of legal size or weight with hook and line at any time.   Section 10 prescribes the legal size or weight below which it shall be unlawful to catch or to sell or offer for sale fifteen specified varieties of fish, including pike, besides turtle or terrapin and frogs.   There is no prohibition in this section of the sale of fish above the specified size.   Section 11, however, forbids the sale, and section 12 the transportation out of the State, of any fish of four of the varieties mentioned in section 10, viz., black bass, pike, pickerel and pike perch, commonly known as wall-eyed pike or as jack or yellow salmon.   These fish of the legal size may be taken at any time with hook and line but not otherwise, and they may not be sold at any time.   To prevent evasions of the law (it is to be presumed) by the sale of fish of these varieties caught in the waters of this State under the pretense that they were caught outside the State, section 11 prohibits the sale, and section 12 the transportation, of such fish even though caught outside the State.   It is contended that this provision is not only unreasonable and unnecessary, but that instead of preserving or increasing the food supply of the State it will deprive the people of the State of thousands of tons of cheap fish,—wholesome food,—now imported from Minnesota and Canada.   The object of the law is to pre-

vent the destruction of the varieties of fish named, by prohibiting the taking of them otherwise than by hook and line. As a means of enforcing this prohibition the legislature has seen fit to prohibit the sale of such fish, no matter where or how taken. We held in the *Magner case* that such prohibition tended to the protection of game in this State and was a proper exercise of the police power. The same conclusion has been reached in numerous decisions of the courts of other jurisdictions. (*Phelps* v. *Racey,* 60 N. Y. 10; *Commonwealth* v. *Savage,* 155 Mass. 278; *Roth* v. *State,* 51 Ohio St. 209; *Ex parte Maier,* 103 Cal. 476; *State* v. *Rodman,* 58 Minn. 393; *State* v. *Schuman,* 36 Ore. 16; *People* v. *O'Neil,* 110 Mich. 324; *Haggerty* v. *St. Louis Ice Manufacturing and Storage Co.* 143 Mo. 238; *Stevens* v. *State,* 89 Md. 669; *Silz* v. *Hesterberg,* 211 U. S. 31.) The legislature, having the power to enact a law for the preservation and protection of fish in domestic waters, had the right to make the law effective by providing against its evasion, and for that purpose to limit the use of private property to the detriment of the law. The act does not interfere with the use of either domestic or imported fish by the owner for his own consumption or with his giving it away. It is only such use as interferes with the purposes of the act which is prohibited. Neither the fourteenth amendment to the constitution of the United States nor section 2 of article 2 of our State constitution inerferes with the legitimate exercise of the police power of the State,—the power to adopt all regulations necessary for the health, good order, morals and welfare of society. Where the power exists, the manner and means of enforcing it rests with the legislature, so long as such manner and means are reasonably adapted to the purpose and do not arbitrarily and unreasonably interfere with rights protected by the constitution.

It is contended that sections 11 and 12 unlawfully restrict commerce with foreign nations and among the States.

So far as section II is concerned, this question seems to have been disposed of by the Supreme Court of the United States,—the final authority,—in the case of *Silz* v. *Hesterberg; supra.* In that case a statute of the State of New York which prohibited the possession of game during the closed season was held not to be an unconstitutional regulation of commerce, even though it applied to game lawfully taken in a foreign country during the open season there. The rule was applied which has been repeatedly held, that laws passed by a State in the exercise of the police power, not in conflict with laws of Congress on the same subject and indirectly or remotely affecting inter-State commerce, are nevertheless valid laws. It was said that the purpose of the law was not to regulate inter-State commerce, but, by laws applicable alike to foreign and domestic game, to protect the people of the State in the right to use and enjoy the game of the State. While these provisions may incidentally affect the right of one importing game to hold and dispose of it in the closed season, the effect is only incidental. It is true that in that case there was an open season, while here there is no time during which the fish may be possessed for sale though they may be taken in the manner allowed by the statute at any time. The right to preserve game has its origin in the police power, and may be enforced by adequate police regulation though commerce may be indirectly affected. When the power is conceded, then the extent to which, and when and how, it shall be exercised are for the determination of the legislature, so that such exercise does not result in the arbitrary destruction of constitutional rights. The legislature has deemed it expedient for the protection of domestic fish of the varieties named not to fix any absolutely closed season, but to prohibit certain methods of taking fish and permit them to be taken with hook and line at all times,—not to absolutely prohibit the possession of such fish at any time, but only the

possession of fish below a certain size and of fish intended for sale, without reference to where or when they have been taken. The principle of the *Silz case* applies to this condition. The object of section 11 is not to regulate inter-State commerce, but, by laws applicable alike to foreign and domestic fish, to protect the people of the State in the right to use and enjoy the fish of the State, and the effect upon importers of fish is incidental, only.

With regard to section 12 the case is different. That section deals with inter-State commerce, and that only. So far as it concerns fish caught within the State it is valid, for since fish are the common property of the people of the State, and may be taken only upon such terms as the State, acting for the benefit of the people, may allow, the ownership acquired by such taking is qualified and is subject to the regulations imposed by law, (*Geer* v. *Connecticut, supra,*) but so far as it concerns sound and wholesome fish taken outside the State, as in this case, it is void. A State has no power to wholly exclude a lawful article of commerce produced in another State or country. While it may regulate the introduction of an article, including a food product, so as to insure its purity, the police power does not extend to its total exclusion. (*Schollenberger* v. *Pennsylvania,* 171 U. S. 1.) In that case an act of the legislature of Pennsylvania prohibiting the manufacture and sale of oleomargarine to the extent that it prohibited its introduction from another State and sale was held void. In *Minnesota* v. *Barber,* 136 U. S. 313, an act for the protection of the public health by providing for inspection in Minnesota, before slaughter, of animals designed for human food was held to be an unconstitutional regulation of inter-State commerce. The same doctrine was applied to a similar Virginia statute, in *Brimmer* v. *Rebman,* 138 U. S. 78. So it was held in regard to a statute prohibiting the driving or conveying into the State of Missouri of Texas, Mexican or Indian cattle between the first day of March

and the first day of November in each year.   (*Hannibal
and St. Joseph Railroad Co.* v. *Husen,* 95 U. S. 465.)   And
the same principle was affirmed in the cases concerning the
importation of intoxicating liquors into States whose laws
prohibited their manufacture or sale.   (*Bowman* v. *Chicago
and Northwestern Railway Co.* 125 U. S. 465; *Leisy* v.
*Hardin,* 135 id. 100.)   In all these cases the statute pro-
hibited the bringing of the forbidden article into the State,
but the case is not different where the statute prohibits the
transportation of the article out of the State.   Commerce
between the States is as much restricted by detaining the
property involved within the State as by keeping it out.
Sound, wholesome fish constitute a valuable article of food
and are property.   The owner of such fish taken in another
State or a foreign country has the right to bring them into
Illinois for any lawful purpose.   He may not have the pos-
session of them here for the purpose of sale, but he may
have them for his own consumption, to give away, or he
may store them.   He has the right to receive another's fish
for storage.   If, being the owner, he desires to ship them
to another State he has the right to do so, or if, having
them in store for another, the owner orders him to ship
them to another State he may do so.   This transportation
of commodities from one State to another is inter-State
commerce, and section 12 of the act, so far as it prohibits
such transportation, is unconstitutional and void.

The judgments in cases No. 7978 and No. 7981 will be
affirmed and in No. 7979 and No. 7980 will be reversed,
and the latter causes will be remanded.

*Nos. 7979 and 7980 reversed and remanded.*
*Nos. 7978 and 7981 affirmed.*