STERRETT et al. v. GIBSON.    (No. 5324.)

(Court of Civil Appeals of Texas. San Antonio. June 3, 1914. Rehearing Denied June 22, 1914.)

1. VENUE (§ 11*)—ACTIONS AGAINST PUBLIC OFFICERS—STATUTE.

Rev. St. 1911, art. 1830, subd. 20, excepting from the provision fixing the venue of actions as the county of defendant's residence suits against the head of a department for mandamus, does not apply to a suit against such officer for damages and injunction.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 20; Dec. Dig. § 11.*]

2. MANDAMUS (§ 142*) — ACTIONS AGAINST PUBLIC OFFICERS—STATUTE—"HEAD OF DEPARTMENT."

The game, fish, and oyster commissioner is not the head of a department within the meaning of that section.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 279–281; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 4, p. 3225.]

3. COURTS (§ 472*)—JURISDICTION—SUPREME COURT—MANDAMUS OR INJUNCTION.

Rev. St. 1911, art. 5732, giving the Supreme Court exclusive jurisdiction to issue mandamus or injunction against any officers of the executive department of the state to compel the performance of any act or duty which they are authorized to perform, does not deprive the district court of jurisdiction to restrain by injunction an executive officer from performing an act

authorized by a state law which is claimed to be invalid.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 442, 451, 459, 465, 619, 1199–1202, 1204–1224, 1247–1259; Dec. Dig. § 472.*]

4. PENALTIES (§ 2*)—CONSTRUCTION OF STATUTE—INTENT OF LEGISLATURE.

Penal Code 1911, art. 906, as amended by Acts 33d Leg. c. 135, which act amended Penal Code 1911, arts. 901–923, inclusive, and adding thereto articles 923a–923k, which article provided a penalty for violation of any provision of the act, when construed with the other provisions of the act which imposed different penalties for violation of the other articles, and to effectuate the intent of the Legislature, imposes the penalty only upon the violation of that article, and not upon the other articles of the act.

[Ed. Note.—For other cases, see Penalties, Cent. Dig. §§ 2, 11; Dec. Dig. § 2.*]

5. FISH (§ 8*)—POWER TO PROTECT AND REGULATE.

Rev. St. 1911, art. 3980, declaring that all public waters within the jurisdiction of the state, and all products thereof, are the property of the state except so far as their use is permitted, is merely a declaration of the sovereign right of the state to protect the fish and game within its borders, and its power to regulate and control, or absolutely prohibit, the taking of fish.

[Ed. Note.—For other cases, see Fish, Cent. Dig. § 16; Dec. Dig. § 8.*]

6. FISH (§ 9*)—SEIZURE OF NETS—CONSTITUTIONALITY OF STATUTES.

In the exercise of the power of the state to protect fish, it may not only prohibit the use of seines and nets, but to enforce such regulation may declare seines and nets to be a nuisance, and require their abatement, as was done by Penal Code 1911, art. 932c.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 17, 18; Dec. Dig. § 9.*]

7. FISH (§ 9*)—SEIZURE OF NETS—CONSTITUTIONALITY OF STATUTES.

Penal Code 1911, art. 923k, declaring that all seines or nets found on or in waters where fishing was prohibited by such means are nuisances, and providing for their abatement, is a valid exercise of the power of the state to regulate the right of fishery.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 17, 18; Dec. Dig. § 9.*]

8. FISH (§ 11*)—REGULATION—ORDERS — VALIDITY.

It is no objection to an order of the fish commissioner closing a certain water against fishing with seines and nets that it does not name the time for which it is to be closed.

[Ed. Note.—For other cases, see Fish, Cent. Dig. § 21; Dec. Dig. § 11.*]

9. INJUNCTION (§ 75*)—ADEQUACY OF LEGAL REMEDY — DESTRUCTION OF NETS BY FISH COMMISSIONER.

A fisherman whose nets and seines the fish commissioner is threatening to destroy has an adequate remedy at law for all damages which he may sustain by the unlawful destruction of his nets, and is not entitled to an injunction to restrain such destruction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 143, 144, 150; Dec. Dig. § 75.*]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by C. W. Gibson against W. G. Sterrett and others. From an order issuing a temporary injunction, defendants appeal. Reversed, and judgment rendered denying the injunction.

Davidson & Bailey, of Cuero, for appellants. T. O. Woldert, of Corpus Christi, for appellee.

FLY, C. J. This is a suit instituted by appellee against W. G. Sterrett, Game, Fish, and Oyster Commissioner of the State of Texas, hereinafter styled Commissioner, and W. E. Everhart and Joe A. Williams, deputies of the Commissioner, for $10,000 damages and to restrain them from executing certain orders issued by the Commissioner in regard to fishing in the waters described therein. The court issued a temporary injunction restraining appellants from executing such orders, and this appeal has been perfected from that restraining order.

One of the orders declared certain described waters closed against fishing, and the other gave notice of rules to govern fishermen and is as follows:

"All American citizens desiring to fish for market with nets and seines in the open waters of the Gulf of Mexico and in the open waters of the Laguna Madre, are hereby notified that they will be permitted to carry seines or nets to the Gulf through Corpus Christi Pass under the following rules:

"1st. Such seines or nets shall only be carried through such pass on each Tuesday of the week between the hours of sunup and sundown.

"2nd. In going to such other waters of the Gulf through the pass, the seines or nets shall at once be carried or taken to a point at least a mile from such pass.

"3rd. Persons desiring to carry or take seines or nets through the closed waters where the Laguna Madre and Corpus Christi Bay meet will be permitted to carry and take such seines or nets through such closed waters on Wednesday of each week under the following rules:

"1st. Such seines or nets shall only be carried through such closed waters between the hours of sunrise and sunset.

"2nd. Such seines and nets shall not be left in or on such closed waters or on boats in such waters.

"Any seines or nets found within one mile of Corpus Christi Pass whether in the water, on land, or boats, will be at once destroyed, and persons either in possession of them or placing them within one mile of such pass, will be prosecuted and on conviction they will be deprived of their licenses to fish for market.

"All seines or nets found in the waters or on boats within the closed waters of Laguna Madre, will be at once destroyed and the persons either in possession of them or who has placed them in such closed waters will be prosecuted, and on conviction, will be deprived of their licenses as recorded fishermen.

"Where boats are anchored in any of the closed waters mentioned, they are under the law prohibited from having seines or nets on their boats."

[1, 2] The Commissioner filed a plea of privilege to be sued in Travis county and also pleaded that no court except the Supreme Court of Texas had jurisdiction to entertain such an action against him, for the reason that the Game, Fish, and Oyster Commissioner is a member of the executive department of the state of Texas. If it be conceded that the Commissioner is a head of a department as contemplated in exception 20 under article 1830, Rev. Stats. of 1911, still

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

this suit is not one for mandamus, but for damages and injunction, and the statute would have no application. We do not think, however, that the Commissioner comes with in the purview of the statute.

[3] The statute which gives the Supreme Court exclusive jurisdiction to issue the writ of mandamus or injunction, or any other mandatory or compulsory writ of process against any of the officers of the executive department of this state confines that jurisdiction to such named writs as are issued— "to order or compel the performance of any act or duty which, by the laws of this state, they, or either of them, are authorized to perform, whether such act or duty be judicial, ministerial or discretionary." Rev. St. 1911, art. 5732.

The exclusive jurisdiction of the Supreme Court is confined to cases in which it is sought to compel an officer of the executive department to do or perform an act or acts enjoined upon him by the laws of the state, and the statute does not apply to cases in which the rights of person or property are invaded by such officer. In such cases swift, decisive action is demanded, and redress would be practically denied for trespasses and torts committed by members of the executive department. What act or duty is appellee seeking to order or compel the Commissioner to perform that is authorized by the laws of Texas? He is not seeking to compel him to perform any act or duty, but to restrain him from performing an act or duty enjoined upon him by the laws of the state, which appellee claims are invalid. The district court had jurisdiction of the cause.

[4] The act of the Thirty-Third Legislature, Gen. Laws of 1913, p. 268, which amends articles 901 to 923, inclusive, of the Penal Code, and adds thereto articles 923a to 923k, inclusive, and repeals articles 868 and 869, is assailed by appellee as being incapable of enforcement, because it provides two different penalties for the same offense. As upholding this contention, it is claimed that as article 906 provides that:

"Any one violating any of the provisions of this act shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined in any sum not less than twenty-five nor more than two hundred dollars"

—and other articles in the act provide other and different penalties, the act is inconsistent, unintelligible, and wholly inoperative. The word, "act," used in article 906, clearly refers to the article, and not to the whole law made up of different articles defining different offenses and providing different penalties. The construction sought to be placed upon the statute is violative of the rules of statutory construction. In construing it, every part of the statute must be viewed in connection with the whole so as to harmonize all the parts, and that construction must be given that will sustain and not destroy the law. Another rule is that statutes must be construed according to rules of reason and common sense and conformably to the intention of the Legislature. In this instance the Legislature was passing an act to secure protection for the fish and oyster industries, and to punish the acts of those who would destroy those industries if not restrained by the strong arm of the law. Each article of the act is a separate act, complete in itself, rendering criminal the doing or failing to do certain things, and providing a punishment therefor. In one, it makes it unlawful not to scatter culls, and provides a punishment; in another, it makes it an offense to catch fish, turtle, terrapin, or shrimp in certain waters with seines, dragnets, fykes, set nets, trammel nets, traps, dams, or weirs, and so on with each separate article. It is reasonable to so construe article 906 as to make it refer to its own provisions alone, as was clearly the intent of the Legislature, and it should be upheld. Railway v. Gross, 47 Tex. 428. As said by the Supreme Court in the case of Russell v. Farquhar, 55 Tex. 355, in discussing an attempt to construe statutes by the mere literal meaning of the words in which they are couched:

"To be thus controlled, as has often been held, would be for the courts, in a blind effort to refrain from an interference with legislative authority by their failure to apply well-established rules of construction, to in fact abrogate their own power and usurp that of the Legislature, and cause the law to be held directly the contrary of that which the Legislature had in fact intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to try out the right intendment of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence, or otherwise, by the Legislature to express its intent, and to follow which would prevent that intent."

It would be a terrible perversion of the statute in question to hold that a statute should be destroyed that has for its object the protection of one of our greatest industries from vandalism, by not recognizing the clear intent to use the word "article" instead of "act." It would be inexcusable to strike down this wise and salutary law by such a narrow and unwarranted construction.

In his fiat the trial judge did not attempt to enjoin the enforcement of the articles of the statute defining the different crimes and providing the penalties, but enjoined appellants from acting under the provisions of articles 923c and 923k, the first of which declares that "nets, seines, boats or other devices for catching fish, unlawfully used in the waters of this state, or boats, dredges, barges and tongs unlawfully used in violating the oyster laws of this state, are hereby declared public nuisances and may be summarily seized, destroyed and abated by the Game, Fish and Oyster Commissioner, or his deputies, and no action for damages shall be maintained against such Commissioner or his deputies for such seizure, destruction and abate-

ment".; and the second article makes it unlawful for any person to carry into, or have in his possession, any seine or dragnet, in any waters where seining is prohibited, and makes it punishable as a misdemeanor and gives the Commissioner authority to destroy any such seine or dragnet.

[5] It is declared in article 3980, Revised Statutes, that:

"All of the public rivers, bayous, lagoons, lakes, bays and inlets in this state and all that part of the Gulf of Mexico within the jurisdiction of this state, together with their beds and bottoms, and all of the products thereof, shall be, continue and remain the property of the state of Texas, except so far as their use shall be permitted by the laws of this state."

[6] This is merely a declaration of the sovereignty that abides in every state so far as the fish and game within its borders are concerned, and in the consideration of the rights of individuals in connection with fish and game it must always be kept in mind that the state has the undoubted right, power and authority to regulate and control the taking of fish or killing of game, or absolutely prohibit the doing of either. The citizen has no vested right in game and fish, but the state owns the game and the tide waters and the fish therein, as well as the beds of all tide waters. McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248; Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793; Silz v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. Ed. 75; Ex parte Blardone, 55 Tex. Cr. R. 189, 115 S. W. 838, 116 S. W. 1199, 21 L. R. A. (N. S.) 607. The state has the power and authority to make laws deemed necessary and proper for the preservation of its game and fish, and such power has been exercised so long and so beneficially that any attempt to call it in question will meet with scant consideration by any appellate court. Not only has the state the power to preserve its game and fish, but it is its duty to do so by enacting laws prohibiting destructive and exhaustive methods of taking the same, by the use of instruments that will destroy them at improper times and places. In the exercise of this wise and beneficent police power the state has authority to not only declare that seines and nets shall not be used in its waters, but to make such use a crime, and to take all measures necessary to prevent a repetition of such offenses. Such instruments of destruction of fish may be declared nuisances by the Legislature and its officers authorized to destroy them.

In the case of Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385, it was held, in sustaining a statute of New York which declared nets nuisances and provided for their destruction:

"An act of the Legislature which has for its object the preservation of the public interests against illegal depredations of private individuals ought to be sustained, unless it is plainly violative of the Constitution, or subversive of private rights. In this case there can be no doubt of the right of the Legislature to authorize judi-cial proceedings to be taken for the condemnation of the nets in question, and their sale or destruction by process of law. * * * But where the property is of little value, and its use for the illegal purpose is clear, the Legislature may declare it to be a nuisance, and subject to summary abatement. Instances of this are the power to kill diseased cattle; to pull down houses in the path of conflagrations; the destruction of decayed fruit or fish or unwholesome meats, or infected clothing, obscene books or pictures, or instruments which can only be used for illegal purposes. While the Legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty * * * in the means employed. * * * The object of the law is undoubtedly a beneficent one, and the state ought not to be hampered in its enforcement by the application of constitutional provisions which are intended for the protection of substantial rights of property. It is evident that the efficacy of this statute would be very seriously impaired by requiring every net illegally used to be carefully taken from the water, carried before a court or magistrate, notice of the seizure to be given by publication, and regular judicial proceedings to be instituted for its condemnation."

The law of New York authorized the destruction of the fish nets in much the same terms that the Texas statute does.

The Supreme Court of the United States also held in the case cited that the contention that nets are not in themselves a nuisance, but are lawful acts of manufacture and ordinarily used for a lawful purpose is not a conclusive argument against the law, for the Legislature has the power to declare that which is perfectly innocent in itself to be unlawful. And in the case of People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452, which is cited by the Supreme Court in Lawton-Steele Case, it is held:

"It is not a good objection to a statute prohibiting a particular act and making its commission a public offense that the prohibited act was before the statute lawful or even innocent, and without any element of moral turpitude."

The Supreme Court also approved the case of State v. Snover, 42 N. J. Law, 341, in which it was held that:

"After a statute has declared an invasion of a public right to be a nuisance, which may be abated by the destruction of the object used to effect it, the person who, with actual or constructive notice, * * * sets up such nuisance cannot sue the officer whose duty it has been made, by the statute, to execute its provisions."

There are cases that hold to the contrary of the propositions herein enunciated, but we prefer the line of decisions, sustaining the authority of the state, in the protection of a great industry, to declare instruments of destruction nuisances and to abate them by destroying them, to that line which would erect barriers of technicalities in the pathway of the state and permit the destruction of fish and game in the interest of men who have no end in view except the upbuilding of their personal fortunes at the expense of the public. No right of theirs is invaded by providing for the destruction of seines and nets found in prohibited places, for it is only by

permission of the state that they can fish in its waters, and they must conform to its restrictions and regulations or incur the penalty of being stripped of the right to fish at all. As said by Judge Ramsey in Ex parte Blardone:

"The Legislature has not only the authority to regulate the slaughter of such game, but to make such laws * * * as may and will defeat evasions and prevent violations of this law."

[7] It is unreasonable to contend that the state has no authority to prevent seines and nets being taken into certain prohibited waters when the state would have the authority to say that no fish could be caught with seines or nets in any of its waters, and to declare all seines and nets found on or in such waters nuisances and provide for their abatement.

There was no effort upon the part of the Commissioner to prevent fishing in waters not within one mile on either side of passes leading from the Texas coast waters into the Gulf of Mexico, and days are fixed by the orders of the Commissioner on which seines can be carried to the open waters and on which they can be returned.

[8] It is no objection to the order closing certain waters against fishing with seines and nets because it does not name the time that it is closed. There is no requirement that it shall be for a definite period.

It is insisted by appellee that while the Supreme Court of the United States and the New York Court of Appeals have held that the state could declare the setting or placing of nets in forbidden waters a nuisance and destroy the nets, there is no authority for declaring the carrying of nets or seines over, across or through the same waters a nuisance and abate the same. If the state deemed it necessary for the protection of fish to forbid persons carrying nets or seines into waters in which seining is prohibited, it could do so. The authority to prohibit the unlawful use of nets in the waters carries with it the authority to prohibit seines from being carried into places where the law could be violated by their use. There can be no necessity for carrying them into forbidden waters, and it is a wise precaution to remove the temptation to fish from those who might desire to depredate on public property. The unbridled destruction of game and fish in Texas has continued for so long a time that many persons are rebellious when it is sought to protect these sources of food supply, and cannot realize that they are the property of the state and not private property.

The statute of New York, construed by the United States Supreme Court, gave the authority to seize and destroy any net found in closed waters as well as those set. Lawton v. Steele, 119 N. Y. 227, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813. The Court of Appeals declared:

"But we know of no limitation of legislative power which precludes the Legislature from en-larging the category of public nuisances, or from declaring places or property used to the detriment of public interests, or to the injury of the health, morals, or welfare of the community, public nuisances, although not such at common law."

The imaginary case of some one having his net taken from him and destroyed while going to or returning from the open waters of the Gulf is not before this court, and probably never will be, and we are not called upon to meet or consider any such case. The law is not oppressive, but was passed to conserve the public interests and protect public property and invades no individual rights, and injures no one who is willing to obey its behests. Such laws, wise and beneficent as they are, have met with resistance all over the Union, but in most instances have been sustained. As said by the Court of Appeals of New York in Phelps v. Racey, 60 N. Y. 10, 19 Am. Rep. 140:

"The Legislature may pass many laws the effect of which may be to impair or even destroy the right of property. Private interest must yield to the public advantage. All legislative powers, not restrained by express or implied provisions of the Constitution, may be exercised. The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds, one of which is for purposes of food. The measures best adapted for this end are for the Legislature to determine, and courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body."

The sentiment of the people, however, has at last been aroused, and is back of the legislation to conserve the fish and game of the state, and no backward steps will be taken in the matter. The Legislature has spoken in response to the demands of modern, civilized sentiment, their laws have not violated any constitutional provision or invaded any private rights, and they must be obeyed. Commonwealth v. Patsone, 231 Pa. 46, 79 Atl. 928; People v. Booth Fisheries Co., 253 Ill. 423, 97 N. E. 837.

[9] Appellee has an adequate remedy at law for all damages he may sustain from the unlawful destruction of his property, and is not entitled to the equitable remedy of injunction to prevent an officer from executing the laws of the state, which may or may not be unreasonable. As to the wisdom and propriety of the laws, courts can have no concern, so long as they do not invade any vested right of the citizen. Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385.

The state of Texas empowers the Commissioner to give licenses to fishermen and dealers, and provides that if one of them is found guilty of a violation of law regulating fishing, his license shall be forfeited. This the state has the undoubted power and authority to do. Fishermen have no vested right to take fish from waters belonging to the state any more than the citizen has the vested right to engage in the sale of liquors, and in the one case as in the other the state can, under

certain circumstances, recall and revoke the license. Greiner v. Truett, 97 Tex. 377, 79 S. W. 4; Hernandez v. State (Civ. App.) 135 S. W. 170; Baldacchi v. Goodlet (Civ. App.) 145 S. W. 325; Lane v. Schultz (Civ. App.) 146 S. W. 1009.

The judgment of the trial court is reversed, and judgment here rendered that the writ of injunction be denied, and that appellee pay all costs in this behalf expended.