**STUARD et ux. v. THOMPSON, Tax Collector. (No. 10121.)**

(Court of Civil Appeals of Texas. Fort Worth. March 10, 1923.)

1. **Taxation** ⬅515—Tax collector may refuse to accept taxes tendered without payment of wife's poll tax, though women are not compelled to vote.

In view of Const. art. 8, §§ 1, 15, article 6, § 2, as amended in July, 1921, so as to confer the right of suffrage on women, Vernon's Sayles' Ann. Civ. St. 1914, art. 7354, Rev. St. art. 7630, and Rev. St. art. 2939, as amended by Acts 36th Leg. (1920) 4th Called Sess. c. 6 (Vernon's Ann. Civ. St. Supp. 1922, art. 2939), requiring that persons qualified to vote by Const. U. S. Amend. 19, pay a poll tax, a tax collector's refusal to accept taxes tendered by a taxpayer without payment of his wife's poll tax, denied neither any guaranteed constitutional or statutory right, though women are not compelled to vote by the constitutional amendment or statute conferring such privilege.

**2. Elections ⊕1—Right to vote not inherent, but exercise of political power which may be regulated, modified, or withdrawn by authority conferring it.**

The right to vote is not a necessary or fixed incident to citizenship or an inherent right, but the exercise of a political power, which may be regulated, modified, or withdrawn by the authority which conferred it.

**3. Elections ⊕18—Legislature may require women to pay poll tax in order to vote.**

Under Const. art. 8, § 1, authorizing the Legislature to impose a poll tax, it may extend its power to levy taxes on property owned by women, whether they vote or not, so as to include poll taxes as a condition precedent to the exercise of such privilege.

**4. Taxation ⊕55—Act requiring women between certain ages to pay poll tax not in violation of uniformity clause.**

Acts 36th Leg. (1920) 4th Called Sess. c. 6, requiring women between 21 and 60 to pay poll taxes in order to vote, *held* not void as violating the uniformity clause of the Constitution; such tax being levied on all persons within given ages and fairly within the Legislature's power to make reasonable classifications of the subjects of taxation.

**5. Taxation ⊕544—State comptroller's regulation pursuant to which tax collector refused to accept taxes tendered without poll tax on payer's wife held valid.**

A regulation by the comptroller of public accounts, pursuant to which a county tax collector declined to accept taxes tendered by a taxpayer without the addition of a poll tax levied on his wife, as required by Acts 36th Leg. (1920) 4th Called Sess. c. 6, *held* valid as a reasonable and effective means of forcing payment of such tax within the comptroller's power, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4324, 4326, 4334, to adopt such regulations, not inconsistent with the Constitution and laws, as he deems essential to the speedy and proper collection of the state revenues.

**6. Mandamus ⊕119—Tax collector held not so clearly wrong in refusing tender of taxes for failure to include poll tax as to require issuance of writ.**

A tax collector *held* not so clearly wrong in refusing a tender of taxes for failure to include a poll tax on the taxpayer's wife as to require issuance of a writ of mandamus to compel acceptance of the amount tendered, irrespective of the question as to a taxpayer's right to pay taxes on some property without paying those due on other taxable property owned by him, since to foreclose the remaining lien would require a course of procedure tending to delays, costs, uncertainties, and perhaps loss in taxes.

**7. Tender ⊕12(2)—Debtor not entitled to acquittance on tender of amount less than sum due.**

A creditor is not bound to accept less than what is due in full discharge of the debt, nor is a debtor entitled to acquittance on tender of an amount less than is due from him.

**8. Constitutional law ⊕48—Statutes not declared unconstitutional unless clearly so.**

The courts will not declare an act unconstitutional unless clearly so.

**9. Statutes ⊕109—General title fairly indicating object not objectionable if not made cover to incongruous legislation.**

Where a law has but one general object, which is fairly indicated by its title and can be considered by fair intendment as necessarily and properly connected therewith, the generality of the title is not objectionable, if not made a cover to incongruous legislation; the provisions of the act being liberally construed to avoid serious embarrassment of legislation.

**10. Statutes ⊕121(7)—Act levying poll tax on women held not invalid as not embodying subject in title.**

Acts 36th Leg. (1920) 4th Called Sess. c. 6, entitled "An act to amend article 7354, c. 1, title 126, Rev. Civ. St. of Texas," etc., "all of which articles relate to the qualifications of voters, so as to eliminate * * * the word 'male' and * * * levy and collect from all persons, male or female, within certain ages, poll taxes, and fixing the qualifications of voters so as to include all persons, both male and female," etc., *held* not in violation of Const. art. 3, § 35, as levying a poll tax on women without embodying such subject in the title, the levy of such tax being but a detail relating to the qualification of women voters, and hence within the purview of the general subject of the act; it being necessary, to accomplish the purposes of the constitutional amendment conferring the suffrage on women, that the specified articles of the Revised Statutes be amended and 're-enacted.

**11. Statutes ⊕6—Act levying poll tax on women held not unconstitutional as revenue act originating in Senate instead of House.**

Acts 36th Leg. (1920) 4th Called Sess. c. 6, conferring the franchise on women possessing certain qualifications and levying a poll tax on them, *held* not a revenue act, and hence not violative of Const. art. 3, § 33, because it originated in the Senate instead of the House of Representatives.

**12. Taxation ⊕309—Women liable for poll tax levied by Legislature, though not assessed by tax assessor.**

As respects the right of a tax collector to refuse to accept taxes tendered by a taxpayer without an additional poll tax on his wife, it is immaterial that the latter was not assessed for such tax by the tax assessor or had authorized her husband to so permit; the Legislature itself having levied the tax, which is a distinguishing feature of an excise tax.

**13. Statutes ⊕141(1)—Act levying poll tax on women not invalid as amending poll tax law by mere reference to title.**

Acts 36th Leg. (1920) 4th Called Sess. c. 6, entitled "An act to amend article 7354, c. 1, tit. 126, Rev. Civ. St. of Texas, and article 2942," etc., "all of which articles relate to the qualifications of voters, so as to eliminate" therefrom "the word 'male' and * * * levy and collect from all persons, both male and

female, within certain ages, poll taxes, and fixing the qualifications of voters so as to include all persons both male and female," etc., *held* not violative of Const. art. 3, § 36, as amending the law imposing a poll tax by mere reference to its title; it being sufficient that the title primarily and specifically mention the particular articles related to the subject to be amended, in order to harmonize the laws and give effect to the constitutional amendment conferring the suffrage on women.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Mandamus, on the relation of J. B. Stuard and wife, to compel Mrs. Jessie M. Thompson, as Tax Collector of Parker County, to receive and receipt for an amount tendered by relators for taxes. Writ denied, and relators appeal. Affirmed.

Grindstaff & Zellers and Hood & Shadle, all of Weatherford, for appellants.

McCall & Cotten, of Weatherford, W. A. Keeling, of Mexia, and W. W. Caves, of Austin, for appellee.

CONNER, C. J. This case was tried upon an agreed statement of facts, from which it appears that J. B. Stuard and wife, Fannie Stuard, aged 55 and 52 years, respectively, are and have long been residents of Parker county, Tex., and owners of both real and personal community property, subject to state and county taxation; that on the 24th day of February, 1921, the duly elected, qualified, and acting tax assessor of Parker county took the inventory and tax rendition of the property of said Stuard and wife, and included and assessed against both of them a state poll tax of $1.50 and a county poll tax of 25 cents; that the wife, Mrs. Fannie Stuard, did not desire to vote or in any manner exercise the right of suffrage in any primary or general election in the state of Texas, and so informed the said assessor at the time; that the aggregate amount of the taxes of Stuard and wife for the year 1921, including the poll tax of the wife, amounted to the sum of $61.22. It further appears that said tax assessor duly made out his rolls so as to include both poll taxes, and that said rolls were duly approved by the commissioners' court of Parker county, and duly certified to the tax collector, and that on the 31st day of January, 1922, during business hours, J. B. Stuard tendered to the tax collector, Mrs. Jessie M. Thompson, the sum of $59.47, being the total amount of taxes against J. B. Stuard and wife for the year 1921, less the $1.75 that had been assessed against Mrs. Fannie Stuard as a poll tax.

It further appears that the tax collector refused to receive said taxes so tendered and issue a receipt therefor without the payment of the poll tax assessed against Mrs. Stuard, acting upon instructions to that effect from the comptroller of Texas.

This suit was accordingly instituted in the district court of Parker county against Mrs. Jessie M. Thompson, said tax collector, to obtain a writ of mandamus commanding said tax collector to receive the amount so tendered, which the relator also tendered in open court, and issue receipt therefor.

The trial was before the court without a jury and the prayer for the writ denied, and J. B. Stuard and wife have prosecuted this appeal.

The answer in the court below of the respondent, the tax collector of Parker county, appears from the record to have been signed by W. A. Keeling, Attorney General of Texas, and W. W. Caves, Assistant Attorney General, and McCall & Cotten; but no answer or appearance in this court had been made for or in her behalf.

The relators complain of the judgment below, insisting that: (1) Under the laws of the state of Texas, the right of a woman to pay a poll tax is optional with her and is only prescribed by the law as a prerequisite to the right to vote, and in the event she does not desire to exercise the right of suffrage so granted her, the payment of poll tax is not compulsory. (2) That chapter 6 of the General Laws of the state of Texas as enacted by the Fourth Called Session of the Thirty-Sixth Legislature fixing the qualifications of voters, both male and female, is unconstitutional and void, in that said act or bill contains more than one subject and embraces a subject not expressed in its title, contrary to article 3, § 35, of the Constitution. (3) That said act, in so far as it attempts to levy a poll tax upon women, is a bill to create revenue, and that said bill originated in the Senate and not in the House of Representatives, as required by article 3, § 33, of the Constitution.

There are several other assignments, but they may be incidentally disposed of while discussing the several acts of the Legislature pertinent to the subject and need not therefore be here particularly specified.

We are not aware of any decision in this state in which the question presented has been determined, and we regret that we have not had the aid of those representing the respondent below to assist us in the solution of the question, which is whether a poll tax may be levied upon the wife of proper age and not laboring under any disqualification, and, if so, whether the husband, as a prerequisite to an acquittance from all other taxes lawfully assessed against him, must pay the wife's poll tax.

In article 8, § 1, of our Constitution of 1876, it was specially provided that "the Legislature may impose a poll tax." The Legislature in 1882 levied a poll tax upon every male person between the ages of 21 and 60, resident within the state on the 1st day of January of each year (with certain excep-

tions not necessary to notice), an annual poll tax of $1.50, $1 for the benefit of free schools and 50 cents for general revenue purposes, and provided that no county should levy more than 25 cents for poll tax for county purposes. Article 7354, V. S. Tex. Civ. Statutes.

Article 8, § 15, of the Constitution, declares:

"All property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

The Legislature in 1879 (see Rev. Statutes, art. 7630) declared that—

"All real and personal property held or owned by any person in this state shall be liable for all state and county taxes due by the owner thereof, including taxes on real estate, personal property and poll tax; and the collector of taxes shall levy on any personal or real property to be found in his county to satisfy all delinquent taxes, any law to the contrary notwithstanding."

Originally, both by the Constitution and under legislative enactment, the right to vote was limited to male persons. See Constitution, art. 6, § 2; Rev. Stats. art. 2939. But in this respect the Constitution was amended in July, 1921, so as to confer the right of suffrage upon all persons, male and female, 21 years of age and over, not subject to certain exceptions therein named, none of which apply to the relator, Mrs. Fannie Stuard. See Gammel's Edition of the Constitution of Texas 1922, p. 162. The Fourth Called Session of the Thirty-Sixth Legislature in 1920, chapter 6 of the General Laws of that session, the constitutionality of which is attacked by the relator, passed an act amending the several articles of the Revised Statutes relating to the subject so as to conform to and harmonize with the amended Constitution conferring the right of suffrage upon women between the ages of 21 and 60 years, resident within the state and not subject to the exceptions named in article 7354, as above noted. The amended article, 2939, as there set forth, provides, so far as necessary to set out, that—

"Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one years, and who shall be a citizen of the United States, and who shall have resided in this state one year next preceding an election, and the last six months within the district or county in which he or she offers to vote, shall be deemed a qualified elector. * * * Provided, further that any voter who is subject to pay his or her poll tax under the laws of the state of Texas or ordinances of any city or town in this state, shall have paid said tax before he or she offers to vote at any election in this state, and hold a receipt showing the payment of his or her poll tax before the first day of February next preceding such election. * * * The poll tax herein levied shall apply to women as well as to men, and every person who has been made a qualified voter in this state under the Nineteenth Amendment to the Constitution of the United States and who was over twenty-one years of age and under sixty years of age on the first day of January, A. D. 1920, must pay the poll tax herein levied prior to the first day of February, 1921, in order to participate in elections, general, special or primary, held within this state or any subdivision or municipality thereof between the first day of February, 1921, and the thirty-first day of January, 1922, both dates inclusive." Vernon's Ann. Civ. St. Supp. 1922, arts. 2939, 2939a).

The act further provides that it shall be construed as "being cumulative to the election laws of this state now in force except that in case of conflict this act shall control."

[1, 2] In view of sections of the Constitution and articles of the statutes hereinbefore referred to, we find nothing in the act of the Thirty-Sixth Legislature last noted for which it can be clearly said, as must be done before we can hold that the court below erred in denying the writ of mandamus prayed for, that the refusal of the tax collector of Parker county to accept the taxes tendered by the relator J. B. Stuard, without the payment of his wife's poll tax, denied either of any right guaranteed to them by the terms of our Constitution or under legislative acts. It is true that the amended Constitution and chapter 6 of the Thirty-Sixth Legislature, conferring the right of suffrage on women between certain ages and subject to none of the disqualifications specified, is not mandatory in its terms, that is, those women upon whom such privilege is conferred are not compelled to vote in order to avoid liability under penal statutes. As has been so well said in the case of Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 349, in an opinion of the Court of Criminal Appeals written by the lamented Justice Ramsey, now deceased, that—

"The right to vote is not a necessary or fixed incident to citizenship, or inherent in each and every individual, but that voting is the exercise of political power, and no one is entitled to vote, unless the people in their sovereign capacity have conferred on him the right to do so. It may be laid down as a general proposition that the right of suffrage may be regulated and modified or withdrawn by the authority which conferred it"—citing numerous cases in accord with the pronouncements so made.

[3] While, as stated, no women under our laws are compelled to vote, nevertheless the privilege to do so has been conferred upon them, and the power of the Legislature to prescribe the terms upon which the privilege may be exercised cannot be questioned, nor can the state's right be questioned to levy taxes upon real and personal property owned

by women, subject to the limitations provided by the Constitution, whether they do or do not vote. Such power has long been exercised without successful opposition; and we see no reason to doubt the power of the Legislature, expressly given in section 1 of article 8 of the Constitution, hereinabove quoted, to extend the power so as to include poll taxes. In 26 R. C. L. p. 26, § 12, it is said:

"The power of taxation is inherent in a sovereign state. The right to tax is not granted by the Constitution but of necessity underlies it, because government could not exist or perform its functions without it. While it may be regulated and limited by the Constitution, it exists without express authority in the fundamental law as a necessary attribute of sovereignty. The provisions of the Constitution which relate to the power of taxation do not operate as grants of the power of taxation to the government thus set up, but constitute limitations upon a power which would otherwise be without limit."

And in the next section it is said:

"Long before the adoption of the Constitution it was recognized that the most efficient means of preserving the rights of the people was to reserve the power of levying taxes to their representatives, and this principle is expressed in many of the state Constitutions, some of which even require a revenue bill to originate in the more numerous branch of the Legislature."

The author then proceeds to distinguish between property tax and excise tax, and in section 115, p. 140, has this to say:

"Poll or capitation taxes (a species of an excise tax) were in force in the American colonies generally, and before the Revolution a large proportion of the public revenues was raised by taxes on the polls of the inhabitants. * * * Poll taxes merely as such do not conflict with the constitutional provisions requiring uniform and equal taxation, though in particular instances they may be invalid or lacking in uniformity. Such taxes are not necessarily levied only upon citizens of the state. * * * A poll tax may be levied without any notice to the persons assessed, since a notice would be of no possible advantage to them. It would appear to be within legislative power to apply poll taxes to any of the purposes to which ordinary taxes may be applied; but their application is frequently restricted to particular purposes. Some of the states have made the payment of poll taxes condition precedent to the right to exercise the elective franchise. Statutes imposing this limitation have been held to be constitutional, but, being in derogation of common right, have usually been strictly construed. On the other hand it has been held that a poll tax cannot constitutionally be levied upon such of the male inhabitants as fail to vote at the general election."

[4] The holding last mentioned was by the Missouri Supreme Court, and its basis was the conclusion that to so provide violated the uniformity clause of the Constitution; but here no such reason can apply, for by our Constitution and Legislative act, as we have seen, the poll tax is levied upon all persons not excepted within given ages, thus conforming to the rule of uniformity and coming fairly within the undoubted powers of the Legislature to make reasonable classifications of the subject of taxation.

[5] The agreed facts, as we have already indicated, show that the respondent in refusing to receive the sum tendered by relator J. B. Stuard in full payment of his taxes was acting in accordance with the instructions of the comptroller. By reference to title 65, chapter 2, V. S. Tex. Civ. Statutes, it will be seen that the election of a comptroller of public accounts is provided for, and it is declared in article 4324 of the chapter that— ,

"It shall be the duty of the comptroller of public accounts to superintend the fiscal concerns of the state, as the sole accounting officer thereof, and manage the same in the manner required by law; he shall also perform such official acts as were required of the secretary of the treasury of the republic of Texas, when not otherwise provided by law."

In article 4326, it is further provided:

"He shall examine and settle the accounts of all persons indebted to the state, and certify the amount or balance to the treasurer, and direct and superintend the collection of all moneys due the state."

In succeeding articles it is made his duty to require all persons who shall have received any moneys belonging to the state, and not having accounted therefor, to settle their accounts, and to render statements thereof to him. In article 4334, it is specially provided:

"He shall prescribe and furnish the forms to be used by all persons in the collection of the public revenue and the mode and manner of keeping and stating their accounts, *and shall adopt such regulations* (italics are ours), not inconsistent with the Constitution and laws as he may deem essential to the speedy and proper assessment and collection of the revenues of the state."

[6, 7] If the comptroller has been otherwise specifically given power to adopt regulations, we have not found it; but from the quotation hereinabove made relating to this subject, we think the power is plainly to be implied, and, if so, when not in conflict with the Constitution and laws, must be given the effect of legislative enactment, and our attention has not been called to any provision of our Constitution or of any legislative act which inhibits the comptroller from making the regulations pursuant to which the respondent in this case declined to accept the relator's tendered taxes without the addition of the poll tax that had been levied upon the wife, if he deemed it essential to the speedy

and proper collection of the revenues of the state. The regulation seems to be reasonable and an effective means of forcing the payment of the poll tax levied by the Constitution and Legislature, similar in purpose to the legislative provision denying the privilege to vote without payment of such tax. It may be said, it is true, that the property owner should have the privilege of paying the taxes assessed and due upon any specific piece of property owned by him without the payment of the tax due upon any one or more other units of taxable property that he owns. But in such case, in view of the constitutional and legislative provisions hereinbefore quoted, it is evident that there would yet remain the state's lien upon the particular parcel of property upon which the taxes were paid for the payment of all taxes levied upon other units of the owner, upon which the taxes had not been paid, and to foreclose such lien requires a course of procedure which would evidently tend to delays, costs, uncertainties, and perhaps loss in taxes. So that, as stated, as now informed, we are unwilling to say that the respondent tax collector was so clearly wrong in refusing the relator's said tender as to require the issuance of a writ of mandamus prayed for. However, in this connection, we should say that the question of the right of a taxpayer to pay the taxes assessed and due upon one parcel of his property, when he owns more than one, is not presented on this appeal, and is not determined by us. The facts here show without dispute, under the Constitution and laws, that the entire tax assessed against and due from the relators, J. B. Stuard and wife, was $1.75 more than the amount of taxes he tendered to the collector, and it is a very familiar principle announced by numerous decisions in this state that a creditor is not bound to accept a sum less than that which is due from his debtor in full discharge of the debt. Nor is a debtor under those decisions entitled to an acquittance upon a tender to his creditor or collecting agent of an amount less than is due from him.

[8] What we have just said relating to the sufficiency of the relator's tender of taxes and of the right of the collector to demand the poll tax due from Mrs. Stuard is predicated upon the constitutionality of the acts of the Legislature, which the relator attacks, and we will therefore address ourselves briefly to those questions. The rule to be applied in testing the constitutionality of the legislative acts is thus stated in the case of Solon v. State, supra:

"The rule is universal that the courts will not declare an act of the Legislature unconstitutional, unless such infirmity and vice clearly appears. Indeed this rule is necessary, and evidence is that respectful regard in which the judicial should hold the legislative department of our government. On this question Mr. Cooley, in his great work on Constitutional Limitations (page 216) says:

"'It has been said by an eminent jurist that when courts are called on to pronounce the invalidity of an act of the Legislature, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained. The duty of the court to uphold a statute, when the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute, as might not at first seem most obvious and natural. For as a conflict between the statute and the Constitution is not to be implied, it would seem to follow, where the meaning of the Constitution is clear, that the court, if possible, must give the statement such a construction as will enable it to have effect.'"

[9] With the meaning of the rule so stated, it cannot be said, we think, that chapter 6 of the Special Laws of Texas, enacted at its Fourth Called Session, is in necessary conflict, as relators insist, with section 35, article 3, of the Constitution, requiring bills to embrace only one subject which must be expressed in its title. This provision of the Constitution, or similar ones, are to be found in many, if not all, of our state Constitutions, and has frequently been the subject of the judicial investigation and scrutiny. The courts have uniformly refused to adopt a construction which would inevitably tend to the serious embarrassment of legislation, and where the several provisions of the act are fairly indicated in the general object as stated in the title, the several sections are given a liberal construction. The general purpose of the provision is fully accomplished where the law has but one general object, which is fairly indicated by its title; and the generality of the title is not objectionable, so long as it is not made a cover to legislation incongruous in itself, and which by fair intendment can be considered as having a necessary and proper connection. As illustrations, see Doeppenschmidt v. I. & G. N. Ry. Co., 100 Tex. 532, 101 S. W. 1080; T. & P. Ry. Co. v. Stoker, 102 Tex. 60, 113 S. W. 3; M., K. & T. Ry. Co. v. State, 102 Tex. 153, 113 S. W. 916; Cofield v. Britton, 50 Tex. Civ. App. 208, 109 S. W. 493; M., K. & T. Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S. W. 881; Ex parte Flake, 67 Tex. Cr. R. 216, 149 S. W. 146; Texas & P. Ry. Co. v. Webb, 102 Tex. 210, 114 S. W. 1171. See, also, cases cited in

note to section 35, art. 3, in Gammel's Constitution of Texas and United States, 1922. The title of the act thus attacked is as follows:

"Elections—Fixing the Qualifications of Voters, Both Male and Female.

"Chapter 6.

"An act to amend article 7354, chapter 1, title 126, Revised Civil Statutes of Texas, and article 2942, chapter 4, title 49, Revised Civil Statutes of Texas, and article 2943, chapter 4, Revised Civil Statutes of Texas, and article 2939, chapter 4, title 49, Revised Civil Statutes of Texas, all of which articles relate to the qualifications of voters, so as to eliminate from the provisions of all of the said articles the word 'male' and so as to levy and collect from all persons, both male and female, within certain ages, poll taxes, and fixing the qualifications of voters so as to include all persons, both male and female; providing for the payment of poll taxes by certain persons, male and female, desiring to pay the same in order to vote in elections held in this state prior to February 1, A. D. 1921; providing for the issuance of exemption certificates in certain cases; prescribing who may vote in the elections held in this state prior to February 1, 1921; providing penalties for violations of certain of the provisions of this act; providing that nothing herein shall repeal or affect any of the provisions of article 3 of the General Laws of the First Called Session of the Thirty-Sixth Legislature, approved May 9, 1919, and declaring an emergency."

[10] It is insisted, as heretofore stated, that the act of the Legislature under consideration is invalid in that it levied a poll tax upon women, which is a subject not embodied in the title. We are of the opinion, however, that within the rule of decisions already cited, the levy of poll tax is but a detail relating to the qualification of women voters, and hence within the purview of the general subject of the act, as much so as the provision requiring that in order to an exercise of the privilege conferred the woman must be of the age of 21 years or over and not subject to any of the disqualifications mentioned in the act; it being also necessary to accomplish the purposes intended by the amendment to the Constitution conferring the privilege that the articles of the Revised Statutes specified should be amended and re-enacted.

[11] Nor do we think that the act under consideration is violative of section 33, article 3, of the Constitution, requiring bills to create revenue to originate in the House instead of in the Senate. It is true the bill under consideration originated in the Senate and not in the House of Representatives, but the bill is clearly not one to create revenue. The object of the bill was to confer upon women possessing certain qualifications the privilege of the franchise, and, as before stated, the levy of the poll tax was but an incident specified in prescribing their necessary qualification. The following is said in 26 R. C. L. p. 17, § 4:

"Some governments derive a considerable revenue from a judicious exercise of the power of regulation; but since a tax is a charge imposed for the purpose of raising revenue, a charge primarily imposed for the purpose of regulation is not a tax, and is not subject to the constitutional limitations upon the power of taxation. Thus when the Legislature desires to place some limit upon the number of people who will engage in a particular occupation, which if carried on without restraint as to numbers will be injurious to the public welfare, or wishes to restrict the frequency with which some act will be performed, without prohibiting it altogether, it often imposes such a charge or fee upon those engaging in the occupation or performing the act."

In Gieb v. State, 31 Tex. Cr. R. 514, 21 S. W. 190, by the Court of Criminal Appeals, it was held that an act authorizing towns and villages incorporated for free school purposes to levy taxes, which bill originated in the Senate, did not violate section 33, art. 3. And in Raymond v. Kibbe, 43 Tex. Civ. App. 209, 95 S. W. 727, it was held that an act imposing a tax on fishing boats and fish taken to market was not void as a revenue measure originating in the Senate.

[12] Nor do we think it material that Mrs. Fannie Stuard was not assessed for a poll tax by the tax assessor, or that she had authorized her husband to so permit. The Legislature itself levied the tax which is often referred to as a distinguishing feature of an excise tax. See 26 R. C. L. p. 35, § 19.

[13] Nor do we think the act violative of section 36, article 3, of the Constitution, in that it amends the law relating to the imposition of a poll tax by a mere reference to its title. In this respect we think the title of the act primarily and specifically mentions the particular articles of Revised Statutes related to the subject to be amended in order to harmonize the laws so as to give effect to the amendment to the Constitution conferring the privilege of voting upon women, and this is all that was required.

On the whole, we conclude that all assignments of error must be overruled, and the judgment below affirmed.