### GEORGE RAYMOND ET AL v. I. P. KIBBE ET AL.

Decided May 15, 1906.

**1.—Amendatory Act—Title—Constitutionality.**

When an article of the statute to be amended is sufficiently identified by reference thereto in the title of the amendatory act, and the article amended itself sufficiently indicates the purpose of the amendment, the title of the amendatory act is sufficient. The object of the constitutional requirement that the subject of an act should be stated in its title is simply to direct attention to the subject to be legislated upon, and such subject is sufficiently indicated when the title gives the number of an article in the code in which it is included, or identifies an article which forms a part of the acts of a particular legislature.

**2.—Fish and Oyster Law—Act 29th Legislature.**

Chapter 90, of the Acts of the Twenty-ninth Legislature, concerning the taking of fish and oysters in Texas waters, considered, and held not subject to the objection that it embraces more than one subject, neither of which is expressed in the title.

**3.—Fish, Oysters, Etc.—Title Thereto—Tax.**

The title to fish, oysters, terrapin, shrimp, etc., in the public waters of the State is, and always has been, vested in the State, and the State may therefore impose such conditions and burdens as it sees fit upon the appropriation of said property to private uses.

**4.—Same—Taking Shrimp—Not Class Legislation.**

The taking of shrimp is treated by the Legislature as a distinct occupation; it therefore had a right to prescribe a distinct set of rules governing that occupation, and since the occupation is open to all men alike, upon compliance with the law, that feature of the Act in question is not subject to the objection that it is class legislation.

Appeal from the District Court of Calhoun County. Tried below before Hon. James C. Wilson.

*Dupree & Pool* and *Willett Wilson,* for appellant.—Chapter 190 Acts of the Twenty-ninth Legislature, approved April 14, 1905, entitled Fish and Oyster Commissioner, and the several sections thereof, are unconstitutional. Section 35, art. 3, of the Const. 1876; Adams v. San Angelo Water Works Co., 86 Texas, 485.

Section 56, article 3, of the Constitution, giving the right to the Legislature to pass special laws for the preservation of fish, confines the Legislature to that one object, and any law attempted to be passed by the Legislature on the question of fish other than the one for the preservation of the fish, conflicts with said constitutional provision. Sec. 56, art. 3, Const. of 1876; Gustafson v. State, 48 S. W. Rep., 519; 8 Cyc., 1122; Morris v. Cummings, 45 S. W. Rep., 383.

Section 1, article 8, of the Constitution, provides only for the levy and collection of an advalorem or property tax, a poll tax, an occupation tax and an income tax, and any other character of tax attempted to be imposed, is an unconstitutional tax and will not be upheld by our courts. Sec. 1, art. 8, Const. of Texas; Taylor v. Boyd, 63 Texas, 541; Higgins v. Bordages, 88 Texas, 467; Norris v. City of Waco, 57 Texas, 635; 8 Cyc., pp. 1108 and 1110; State ex rel. Armour Pk. Co. v. Stephens, 48 S. W. Rep., 929; 25 A. & E. of Law (1st ed.), pp. 65, 66 and 67; 19 Cyc., p. 988, sec. B, and authorities there cited; State v. Switzler, 45 S. W. Rep., 245; McCready v. Commonwealth of Virginia, 94 U. S., 391.

It is beyond the authority of the Legislature to attempt to clothe the Fish and Oyster Commission of the State with power to levy and collect an advalorem tax, he not being a constitutional officer, nor the officer authorized under the Constitution to levy and collect such tax. Sec. 18, art. 8., Const. of Texas; Sec. 16, art. 8, Const. of Texas; Sec. 14, art. 8, Const. of Texas; Clegg v. State, 42 Texas, 605; George v. Dean, 47 Texas, 86; Cornell v. State, 55 S. W. Rep., 980; Rev. Stats., arts. 5121, 5212a; State v. Switzler, 45 S. W. Rep., 245.

Fish and oysters are personal property, and when in the possession of an individual, can not be taken or confiscated without due process of law. Sec. 56, art. 3, Const.; Sec. 9, art. 1, Const.; Sec. 15, art. 1, Const; Sec. 17, art. 1, Const.; Sec. 19, art. 1, Const.; Art. 2514, chap. 90, Acts 29th Leg.; McCready v. Commonwealth of Virginia, 94 U. S., 391; Gustafson v. State, 48 S. W. Rep., 519; Grigsby v. Peak, 57 Texas, 148; Lynn v. State, 25 S. W. Rep., 779; McFadden v. Longham, 58 Texas, 586; 25 Texas Sup., 293; Paris v. Hale, 13 Texas Civ. App., 389; 8 Cyc., 1126, secs. 1-3, line 21, p. 1122; Armstrong v. Traylor, 87 Texas, 601; Beavers v. Goodwin, 14 Texas Ct. Rep., 429; 19 Cyc., 988, sec. B, and authorities there cited.

Where an individual's property is subject to the payment of a tax, and made liable for said tax, and he is denied the right to contest the payment of said tax in the courts or is denied the right to redeem said property by the payment of said tax and legal charges thereon, or where the surplus of said property, after the payment of said tax, is denied him, or where an officer is clothed with plenary powers to summarily confiscate property upon which a tax may be due, with no equity of redemption in the owner of such property, such character of taxation is unconstitutional. Art. 8, sec. 15, Const.; Paris v. Hale, 13 Texas Civ.

App., 389; Morgan v. Oliver, 82 S. W. Rep., 1029; 8 Cyc., pp. 1106, 1097, 1080 to 1084, 1124 to 1127, 1130 to 1132.

*R. V. Davidson,* Attorney General, and *Jewel P. Lightfoot,* Assistant Attorney General, for appellees.

GILL, CHIEF JUSTICE.—George Raymond, Tony Apostollo and the Port Lavaca Fish and Oyster Company, a corporation, brought this suit to recover damages from I. P. Kibbe, the Fish and Oyster Commissioner of Texas, and J. E. Garner, his deputy at Port Lavaca, Texas, and for injunction perpetually restraining the Commissioner and his deputy from collecting or attempting to collect the special tax imposed under article 2514, chapter 90, of the Acts of the Twenty-ninth Legislature.

Raymond and Apostollo alleged that they were each the owners of boats duly registered in the custom house at Port Lavaca and with said boats were engaged in the taking from the coast waters of Texas fish and oysters for sale on the market. That the Port Lavaca Fish and Oyster Company bought from them all the fish and oysters so caught and taken by them, paying the market price therefor. That fishing was their main business from which they obtained a livelihood and support. That they had paid the license fee required of them under article 2418K of the Act cited above and had, pursuant to the requirements of the Act, registered their boats in the office of appellee and had obtained from appellees their official permit to engage in the business of taking oysters and fish.

It was further averred that the Commissioner and his deputy were collecting and attempting to collect the tax imposed by article 2514 of the Act on fish and oysters taken by them, whereby they had been damaged. The suit both for damages and injunction was predicated on the alleged unconstitutionality of the Act of the Twenty-ninth Legislature of which the two cited articles are a part, it being conceded that the course pursued by defendants was within the requirements of the law as passed. The specific objections to the law were pleaded in detail.

The district judge in chambers granted a temporary injunction, but on final hearing exceptions were sustained to the petition which amounted to a holding that the law was valid, and the plaintiffs refusing to amend a judgment of dismissal was entered. From that judgment plaintiffs have appealed and have presented in their brief sixty-three assignments of error. It is obviously unnecessary to take up these assignments in detail. If the court erred, his error consisted in sustaining the law as valid, hence the answer to the broad inquiry arising upon that ruling will effectively dispose of this appeal.

The parts of the law assailed are referred to in the petition as articles 2514 and 2518K, chapter 90, Acts of the Twenty-ninth Legislature. The title of the Act of which the two cited articles form a part is as follows:

"An act to amend articles 2513, 2515, 2518d, 2518e, of chapter 4, title 48 of the Revised Civil Statutes of 1895; articles 2516 and 2518h of chapter 175 of the General Laws of 1899, passed by the Twenty-sixth Legislature, articles 2514, 2518c and 2518k, chapter 122, of the General

Laws of 1903, passed by the Twenty-eighth Legislature, and article 529g, chapter 130, of the General Laws of 1901, passed by the Twenty-seventh Legislature, and adding 529x and repealing all laws in conflict therewith relating to the Fish and Oyster Commissioner of the State of Texas, his duties, etc., and declaring an emergency."

Section 1 of the Act provides that the articles named "Shall be so amended as to hereafter read as follows:"

Article 2513 is then set out, which declares in substance, among other things, that all the public rivers, bayous, lagoons, lakes, bays and inlets in this State and all that part of the Gulf of Mexico within the jurisdiction of the State, together with their beds and bottoms and all the products thereof, shall be and remain the property of the State, except insofar as their use shall be permitted by the laws of this State. The fish and oyster industry is placed under the control of the Fish and Oyster Commissioner of the State. He is clothed with the power of a sheriff, and enjoined to execute the laws relating to the matters under his control.

Article 2514 reads as follows:

"For the purpose of protecting the fish and improving the natural oyster reefs and protecting both the natural reefs and private oyster beds and to carry out the fish and oyster laws of the State of Texas and as one of the conditions on which the State consents to the taking or removing of fish from her waters, or to the fishing or removal of oysters from her natural reefs, or the use or rental of her water bottoms for oyster propagating purposes, there shall be and is hereby levied a special tax of one-tenth of one cent per pound on all fish, turtle, terrapin and shrimp taken for market from the public coast waters within the jurisdiction of this State and a tax of two (2) cents per barrel on each and every barrel of oysters gathered from the said waters of this State, whether from the natural reefs or private oyster beds, for sale or shipment; provided, that oysters taken from any waters for bedding purposes shall not be subject to this tax until again taken up for sale or shipment. This special tax shall be paid to the Fish and Oyster Commissioner or his deputy, by the person bringing said fish, turtle, terrapin, shrimp or oysters to market, whether he be the person who fished said products or his agent, before he shall be allowed to sell same or consign same to any other party for sale, shipment or storage. When this special tax has been paid it shall be the duty of the Fish and Oyster Commissioner or his deputy receiving the tax to give a receipt for same, together with a permit authorizing holder thereof to dispose of the products on which the special tax has been paid. A duplicate of which receipt and permit shall be retained in the office of said Commissioner issuing same. This permit shall be given by the person delivering said products, to the person, firm or corporation to whom the products mentioned therein shall be sold or delivered for sale, shipment or storage. Any fish, turtle, terrapin, or oysters found in the possession of any packer, buyer or commission man for which he can not show the State permit for the disposition of these products so found shall continue the property of the State and may be seized by the Fish and Oyster Commissioner or any of his deputies and sold, the proceeds thereof to go to the fish and oyster fund of the State.

"It shall be the duty of the Fish and Oyster Commissioner and his deputies to enforce the payment of the special tax herein provided for and as far as practicable to inspect all the products so taxed and to verify the weights and measures thereof; and the Fish and Oyster Commissioner is hereby authorized to formulate such rules and regulations as he may deem most expedient to accomplish the duties above set forth; provided, such rules and regulations shall conform to the Constitution and laws of the State of Texas."

Article 2518k need not be set out in full. It is very lengthy. It provides in substance for the issuance of licenses to the masters or captains of boats designed for taking fish or oysters for market. It provides, among other things, that the applicant for the license shall in addition to the payment of the license fee agree and bind himself to pay the tax imposed in article 2514. The entire act is declaredly designed to protect the fish, oyster, turtle and shrimp in the coast waters of the State, to regulate their taking, to forbid their taking for market except upon certain prescribed conditions, and to place the enforcement of the law under the control of the Fish and Oyster Commissioner.

Appellants contend that the provisions they assail are void because not included in the title of the Act. Under this objection they maintain that the title of an amendment is insufficient if it merely refers to the title of the amended law or to the number of the articles amended. In view of the provision of the Constitution governing the title of legislative acts the proposition has much inherent force and could be sustained upon principles apparently sound. But our Supreme Court, following recognized authority, has established a rule which includes the question before us and requires a holding that if the articles amended are sufficiently identified by references in the title, and the articles amended themselves sufficiently indicate the purposes of the amendment, the title of the amendment is sufficient.

Justice Williams, speaking for our Supreme Court in Mortgage Company v. Hardy, 93 Texas, 299, uses the following language: "The question therefore arises whether or not the title to the Act of 1897, in giving the number of the article to be amended, sufficiently indicated the subject treated in the unconstitutional proviso as a part of the subject of the amendatory act. We can see no substantial reason why this question should not be answered in the affirmative. The object of the requirement that the subject of an act should be stated in its title is simply to direct attention to the subject to be legislated upon. Such subject is sufficiently indicated when the title gives the number of an article of the code in which it is included; and the fact that a provision in such article may be unconstitutional does not lessen the effect of the reference to it as notice that it is to be made the subject of further legislation. The amendatory act derives no force as law from any virtue in the Act amended, but takes effect from the new exercise of legislative power. If such power is extended and the legislative will expressed in accordance with the Constitution such expression becomes law without the aid of the statute referred to in the title whether the latter is constitutional or not. The statute amended is referred to only to indicate the subject with which the Legislature proposes to deal and to such purpose its validity is not essential. The very object of the

amendment may be to supply a constitutional enactment in the place of one which was unconstitutional."

We think there can be no difference in principle between such a reference to an article which has been embodied in the code and one which forms a part of the Acts of a particular Legislature. If the reference is certain and unmistakable the principle applies. It is unnecessary to cite further authority. The opinion in the case cited is an able review of the question and as authority is conclusive. In applying the rule to the law in question we need trace the history of this legislation no further back than the amendatory act of 1903 of which the act in question is itself amendatory. In the act of 1903 (General Laws, p. 189), article 2514 imposes the same tax as imposed by the last act and otherwise prescribes the duties of Fish and Oyster Commissioner in addition to prescribing rules and regulations for the governance of those taking and marketing fish, etc. The assignment assailing the Act as unconstitutional on account of defects in the title are overruled.

We overrule without discussion those assignments which assail the Act as unconstitutional on the ground that it has more than one subject. We think it clear that the general purpose is to regulate the taking of fish, oysters, etc., from the coast waters, and that the provisions objected to are germane to the general subject. It is not required that the title should serve as an index to the various provisions of the Act. (26 Am. and Eng. Ency. of Law, p. 581; Skinner v. Garnett, 96 Fed. Rep., 735.)

The objection is made that the Act attempts to vest in the State the title of the fish, oyster, terrapin, and shrimp in the public waters, and that this object is not embraced in the title. If this objection was sound the fact would remain that the title is so vested in the State and has ever been. The provision is declaratory and immaterial to the validity of the law. But the fact that the subjects of the legislation are the property of the State is not only important but controlling in the disposition of other questions presented in appellant's brief. We will consider them therefore in this connection. The points are made,

First. That the State exhausted its police power over the matters treated in the Act when it provided for license for boats and the cost thereof and supervision by the Commissioner and his deputies. That therefore the tax levied upon the fish and oysters caught by the holders of the license is a property tax which comes under the head neither of an occupation tax nor an excise tax and because it is not levied in the form of an *ad valorem* tax it is void because not equal and uniform.

Second. The Act is a revenue measure and is void because it originated in the Senate, whereas the Constitution requires such measures to originate in the House.

Third. The feature of the law empowering the Commissioner to confiscate fish sold and held without the requisite permit is void, (a) because the articles when reduced to possession are private property, and (b) because takers of shrimp are not included in the forfeiture clause and the provision is therefore class legislation.

Fourth. The Act permits the Commissioner to exercise the power of seizure and sale summarily, thus depriving the individual of his property without due process of law.

If the proposition is sound that the State as the representative of

its citizens is the owner of the fish, oysters, turtle, terrapin and shrimp in its public waters, then the obvious answer to each and all of the last four objections to the law is that the State may impose such conditions, restrictions and burdens as it chooses upon the taking and appropriation of its own property to private ownership and uses. That the basic proposition is sound is established beyond question. (13 Ency. of Law, p. 556; McCready v. Virginia, 94 U. S., 391; Magner v. People, 97 Ill., 334; Dize v. Lloyd, 36 Fed. Rep., 651; Geer v. Connecticut, 161 U. S., 533; American Ex. Co. v. The People, 133 Ill, —.) Similar legislation has been upheld in many jurisdictions. Authorities, *supra.*

Appellants' contention that as the Constitution conferred upon the Legislature the right to pass laws for the preservation of fish and game, the authority to declare the title and ownership to be in the State was thereby excluded. Appellants lose sight of the fact that the provision referred to does not affect the question of ownership, but simply empowers the Legislature to pass such laws as will preserve that class of the public property. This ownership includes the power exercised in this instance. Indeed, it may be truly said that the effect of the legislation in question is to put a price upon such of its property as is taken for market purposes imposing as a condition precedent to the passing of the title the payment of the tax and the full performance of the requirements of the Act. It is not enough that the fisherman procures a license for himself and his boat. His title to the captured fish is still incomplete until he pays the price imposed and receives from the proper officer the evidence of his title. In the absence of this evidence of title, which must follow the fish into the hands of the dealer, they are still the property of the State, and the Commissioner in exercising the power of seizure is simply reclaiming the State's own. If the Commissioner, abusing his power, makes a wrongful seizure the courts are doubtless open to the person aggrieved, just as in the case of a wrongful levy by a tax collector who might summarily seize property not subject to the collection of the tax for the collection of which the levy was made.

It is immaterial that the law-makers denominate the impost a tax. The property belonged to the State, and irrespective of any other reason upon which the legislation might be upheld this ownership furnishes ample basis for the powers exercised. The State having the right to regulate, sell, give or withhold altogether in the protection of its fish and game, certainly had the right to impose the cost of regulation, surveillance and inspection upon those to whom the right to take is granted.

The last objection which we deem it necessary to notice is that shrimp are not made subject to seizure and sale by the Commissioner, hence the law wrongfully favors those engaged in the taking of shrimp. If the law is susceptible of the construction that shrimp wrongfully taken or sold are not subject to seizure, the fact remains that the taking of shrimp is treated in the law as a distinct occupation to which the Legislature had the right to apply a distinct set of rules, and since every man alike may engage in the business of taking them, upon compliance with the law, that feature of the Act is not open to the objection that it is class legislation.

The validity of article 529x of the Act whereby a penalty is imposed,

and penal prosecution authorized for violations of the provisions of the Act is not up for decision upon this record.

We are of opinion the judgment should be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.