**TUTTLE et al. v. WOOD et al.**

No. 8485.

Court of Civil Appeals of Texas. San Antonio.

Nov. 5, 1930.

Rehearing Denied Feb. 25, 1931.

J. D. Todd, of Corpus Christi, for appellants.

Robert Lee Bobbitt and Jack Blalock, both of Austin, for appellees.

SMITH, J.

This action brings into question the validity of statutes regulating, and in certain cases prohibiting, the exploitation of fish and shrimp in certain waters along the coast of Aransas, San Patricio and Nueces counties, for commercial purposes. We regret that, although the questions raised are quite important, appellees have filed no brief

in the case. The legislative acts assailed are chapter 118, Acts Reg. Sess. 41st Leg. (1929) p. 265 (Vernon's Ann. P. C. art. 978f); chapter 119, Id., p. 269 (Vernon's Ann. P. C. art. 941); chapter 75, 2d Called Sess., 41st Leg. (1929) p. 150 (Vernon's Ann. P. C. art. 952l—3). The acts will be hereinafter referred to by their chapter numbers. The case went off on general demurrer which the trial court sustained against appellants' amended petition, the averments of which must be taken as true in so far as they state specific facts.

It was alleged in the stricken pleading that the petitioners, appellants herein, are citizens of this state, as distinguished from aliens, engaged in catching and marketing fish and shrimp from the waters off the coast of Aransas, San Patricio and Nueces counties; that for these purposes appellants "have fully and satisfactorily complied with all the laws and statutory requirements regulating the use of seines and nets and that their seines and nets and other equipment have been duly inspected and approved by the proper officers and found to conform in all particulars thereto, and that plaintiffs are now lawfully engaged in fishing and shrimping with seines, nets and other equipment aforesaid in the waters hereinafter specifically named and described, as market fishermen and dealers therein."

It was alleged that the officials of the State Game, Fish and Oyster Commission, and the law enforcing officers of the named counties, are attempting and threatening to enforce said acts against appellants, and that such enforcement will have the effect of destroying appellants' said business and will render valueless the supplies, equipment, boats, and buildings which appellants have accumulated in the lawful establishment and prosecution of their business, of the value of $500,000.

By the provisions of chapter 118, the office of Game, Fish and Oyster Commissioner was abolished, and the powers and functions of such office were merged into the Game, Fish and Oyster Commission, thereby created. Those powers and functions are prescribed in that act, in great detail.

Chapter 119 is a penal statute, which provides that it shall be unlawful for any person, under the penalty therein prescribed, to use any seine or similar device for catching fish and shrimp, or to have such devices in his possession, without a permit issued by said commission, within certain waters along said coast line. The act contains certain exceptions not necessary to set out here, fixes certain penalties for violation of said provisions, and concludes with this provision: "That the Game, Fish and Oyster Commissioner of Texas or his deputy shall have the power and right to seize and hold nets, seines or other tackle in his possession as evidence until aft-

er the trial of defendant and no suit shall be maintained against him therefor."

The later act, chapter 75, containing provisions, prohibitions, and penalties similar to those in chapter 119, was made to apply to certain other waters not necessary to describe herein.

■ It is contended by appellants that neither the Game, Fish and Oyster Commission, nor its executive secretary, has been given any authority to enforce the game, fish, and oyster laws; that previously that authority was lodged in the Game, Fish and Oyster Commissioner, but that since the latter office was abolished by express provisions of chapter 118, no official has the power to enforce the provisions of said acts. It is true that the single office was abolished as contended, but it was further expressly provided in the abolishing act that the powers, duties, and functions theretofore exercised by the commissioner should thenceforth be exercised by the commission, acting directly or through its executive secretary therein provided for. Appellants' contention is therefore without merit.

■ It is next contended, in effect, that because appellants were pursuing their business in accordance with prior laws, and under licenses issued to them by the proper state authorities under those laws, the Legislature had no power to impose additional or more stringent regulations and prohibitions, whereby appellants' rights under prior laws were further restricted. It must be conceded that the state has the inherent power, to be exercised through the Legislature, to regulate the taking of fish and shrimp from its public waters, and to prohibit from time to time such taking, in order to conserve those natural resources for the ultimate benefit of all the people. So long as that power is reasonably exercised by the legislative authority, no other branch of the government may interfere therewith. Ordinarily, the necessity or reasonableness of regulation or prohibition in specific cases, for the time being, are left to the discretion of the Legislature, whose determination thereof, in the exercise of a sound discretion, is conclusive upon the courts. The power to originate such legislation carries with it the further power to change existing laws, including · regulation and prohibition, to meet changing conditions, and this power is not lost simply because those affected have been licensed to operate under and by virtue of the conditions of prior laws. They were charged with notice that under the grant of power the Legislature could further legislate upon the subject.

■ So may it be said that the Legislature may separate the rights of those engaged in the wholesale business of taking and market-

ing the products of public waters, from the rights of the individual members of the public, and may exclude the former from, while admitting the latter to, the privilege of fishing in those waters, as is sought to be done by the statutes here in question. The rights of the general public are paramount to the rights of those who would commercialize those resources for profit.

These observations, although general in their nature and effect, lead to the conclusion that appellants' petition did not assert a cause of action sufficient to warrant a judicial declaration against the validity of the acts in question, and we are therefore of the opinion that the trial court did not err in sustaining the general demurrer.

The judgment is affirmed.

### On Motion for Rehearing.

In their motion for rehearing appellants complain of the failure of this court to specifically dispose of all of the many questions raised in their pleadings. In deference to this complaint we will discuss those questions not directly disposed of in the original opinion.

By an act effective September 1, 1929, the Legislature abolished the office of Game, Fish and Oyster Commissioner, and by the same act "created the Game, Fish and Oyster Commission which shall have the authority, powers, duties and functions heretofore vested in the Game, Fish and Oyster Commissioner, except where in conflict with this Act." Chapter 118, Acts Reg. Sess. 41st Leg. (1929) p. 265 (Vernon's Ann. P. C. art. 978f). This commission was made to consist of six members; with power to appoint an executive secretary, to act as its "chief executive officer," through whom the "Commission may perform its duties," and "may delegate to him such executive duties" as the commission "shall deem proper." The act contains other provisions not deemed necessary to be set out here.

It is provided in an act approved June 29, 1929 (chapter 75, Acts 41st Leg., 2d Called Sess., p. 150 [Vernon's Ann. P. C. art. 952l—3]), that: "It shall be unlawful for any person to place, set, use or drag any seine, net or other device for catching fish or shrimp other than the ordinary pole and line, casting rod and reel, artificial bait, trot line, set line, or cast net or minnow seine of more than twenty feet in length for catching bait, or have in his possession any seine, net or trawl in or on the waters of the Gulf shore line one-fourth mile from mean low tide from the South end of Padre Island to a point on Mustang Island two miles north of Corpus Christi Pass," and appropriate penalties are prescribed for violation of said provisions.

As amended by an act effective January 1, 1930 (chapter 119, Gen. Laws 41st Leg. [1929] p. 269 [Vernon's Ann. P. C. art 941])

it is provided in section 1, art. 941, of the Penal Code, that: "It shall be unlawful for any person to place, set, use or drag any seine, net or other device for catching fish and shrimp other than the ordinary pole and line, casting rod and reel, artificial bait, trot line, set line, or cast net or minnow seine of not more than twenty feet in length for catching bait, or have in his possession any seine, net or trawl without a permit issued by the Game, Fish and Oyster Commissioners or by his authorized deputy in or on any of the waters of * * * Shamrock Cove, Nueces Bay, Ingleside Cove; Red Fish Cove, Shoal Bay, Mud Flats, Shallow Bay, which are more clearly defined as beginning at the South West end of 'Red Fish Cove,' thence South on a line intersecting Corpus Christi Channel, and all the waters lying from this line, the said Channel, and between Harbor Island and the Mainland to Aransas Bay; all of Aransas Bay between Port Aransas and Corpus Christi Bayou and lying between Harbor Island and Mud Island; Copano Bay, Mission Bay in Refugio County, Puerto Bay, St. Charles Bay, Hynes Bay, Contec Lake, Powderhorn Lake, Oyster Lake; * * * Aransas Pass, leading from Aransas Bay to the Gulf of Mexico; Corpus Christi Pass, leading from Corpus Christi Bay to the Gulf of Mexico; Brazos Santiago Pass, leading from the Lower Laguna Madre to the Gulf of Mexico, or the pass on the north of Laguna Madre, leading into Corpus Christi Bay, which pass shall be defined as beginning one-fourth of a mile southwest of Peat Island and running from said point to Flour Bluff in Nueces County, or in or on the waters within one mile of the passes herein mentioned, connecting the bays and tidal waters of this State with the Gulf of Mexico or in or on or within a mile of any other such passes, or within the waters of any pass, stream or canal leading from one body of Texas bay or coastal waters into another body of such waters. * * *"

In section 1a of article 941, as so amended, it is further provided: "That it shall be unlawful for any person to drag any seine, or use any drag seine, or shrimp trawl for catching fish or shrimp, or to take or catch fish or shrimp with any device other than with the ordinary pole and line, casting rod, rod and reel, artificial bait, trot line, set line, or cast net, or minnow seine of not more than twenty feet in length for catching bait, or to use a set net, trammel net or strike net, the meshes of which shall not be less than one and one-half inches from knot to knot, in any of the tidal bays, streams, bayous, lakes, lagoons, or inlets, or parts of such tidal waters of this State not mentioned in Section 1 hereof." Certain penalties are prescribed for violation of the provisions of the act.

In each of the several penal acts set out above it is provided that where persons are

charged with violation of the provisions of the acts, the "Game, Fish and Oyster Commissioner of Texas or his deputy shall have the power and right to seize and hold nets, seines or other tackle in his possession as evidence until after the trial of defendant and no suit shall be maintained against him therefor."

■ In their fifth proposition appellants challenge the validity of the legislative act prohibiting the taking of fish and shrimp from the waters named in the act upon the ground that such enactment is a "local" or "special" law, and that under constitutional provisions notice of the intention to propose such legislation should have been published as prescribed in those provisions, it being conceded that no such notice was published as a condition to the passage of the act in question. Article 3, §§ 56, 57, Const. We overrule this proposition for the reason that, in our opinion, the act is not a local or special law within the contemplation of the constitutional provisions relied upon by appellants. Clark v. Finley, 93 Tex. 173, 54 S. W. 343; Reed v. Rogan, 94 Tex. 177, 59 S. W. 255; Logan v. State, 54 Tex. Cr. R. 74, 111 S. W. 1028, 1029; Smith v. State, 54 Tex. Cr. R. 298, 113 S. W. 289, 294.

■ It is contended by appellants that said acts are in conflict with other laws of this state not repealed thereby, and that they are "indefinitely framed and are of such doubtful construction that neither of them can be understood." These allegations are too general to invoke a decision by the courts. They point out no other laws with which said acts may be in conflict, nor the points of such conflict, and it is not the duty of courts, upon their own motion, to search the statutes at large for such conflict for the purpose of striking down any one of them. The same may be said of the general allegation that the acts are unintelligible, in contravention of article 6, Penal Code 1925. Appellants do not point out the provisions of the acts claimed to be ambiguous and unintelligible. It is sufficient to say, in this connection, that such defects, if they exist, are not so patent or obvious as to invoke condemnation from a court upon its own motion.

■ So is it claimed that the acts are in contravention of section 35 of article 3, of the State Constitution because their captions do not express the specific subject embraced in the body of the acts wherein it is provided that no suit shall be maintained against the commissioner in case of seizure and retention by him of the paraphernalia of offending fishermen. We overrule this contention. The purpose of the acts, specifically expressed in their captions, is to regulate and in certain cases prohibit the taking of fish and shrimp from the public waters of the state, and under this subject it was permissible for the Legislature to incorporate the purely remedial provision mentioned. Sutherland, Stat. Cons. (2d Ed.) § 136.

■ Appellants insist that the prohibited waters are insufficiently and incorrectly described in the acts assailed, and that in consequence of this defect it is impossible for persons affected by the legislation to ascertain or determine what waters are included within or excluded from the prohibition. We are of the opinion that the acts are not reasonably subject to this objection. The various bays, passes, coves, lagunas, lakes, and flats upon which the prohibitions operate are designated by their respective names, or otherwise located and identified in the acts, so that persons seeking in good faith to obey the laws should have no difficulty in locating and avoiding the waters included within the prohibition. Gibson v. Sterrett (Tex. Civ. App.) 144 S. W. 1189; Gavina v. State, 65 Tex. Cr. R. 572, 145 S. W. 594.

■■ Appellants' chief complaint seems to be against the provisions of the acts which penalize commercial fishermen for fishing in public waters without a permit therefor from the commissioner, or, as substituted by the later statute, the commission. It is contended that by this act the commission is empowered to make a law prescribing a penalty, whereas, it is contended, such power exists exclusively in the Legislature, and cannot be delegated to any other governmental agency.

It is true, of course, that the Legislature cannot delegate to an administrative board the power to make a law prescribing a penalty, but it is equally true that it is competent for the Legislature to authorize a commission or board created for that purpose to prescribe duties or ascertain conditions upon which an existing law may operate in imposing a penalty and in effectuating the purpose designed in enacting the law. It is in pursuance of this authority that railroad commissions, public utility commissions, live stock sanitary commissions, health boards, and like agencies exercise their functions and administer and enforce the laws relating to their several departments. In their very nature such laws must be flexible in order to give them practicable application to the diverse conditions which exist within the several states. It is upon this principle that the legislative authority rests, and it is upon this authority that fish and game commissions are operating in Texas and many other states, under statutes similar to those here attacked, and the principles of which have been uniformly upheld. 6 R. C. L. p. 179 et seq., §§ 179, 180, 181, 481; 11 R. C. L. "Fish and Fisheries," §§ 28, 29, 35, 37; State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639, and note; State v. Hanlon, 77 Ohio St. 19, 82 N. E. 662, 13 L. R. A. (N. S.) 539, 122 Am. St. Rep. 472; Com. v. Sisson, 189 Mass. 247, 75 N. E. 619,

1 L. R. A. (N. S.) 752, 109 Am. St. Rep. 630; Ex parte Leslie, 87 Tex. Cr. R. 476, 223 S. W. 227; Sterrett v. Gibson (Tex. Civ. App.) 168 S. W. 16; Raymond v. Kibbe, 43 Tex. Civ. App. 209, 95 S. W. 727.

Appellants contend that there was no necessity existing for the passage of said acts; that there was no public demand for their enactment. We overrule these contentions. The question of the demand or necessity for legislation is for the Legislature to determine, and such determination is conclusive upon the courts.

It is contended by appellants that the act is violative of the due process and equal protection clauses of the Federal and State Constitutions, and in contravention of the provision of the State Constitution vesting the Legislature with the exclusive power to make laws. We are of the opinion that the acts are not subject to these objections.

Appellants' motion for rehearing is overruled.