

# THE ATTORNEY GENERAL
## OF TEXAS

September 28, 1988

JIM MATTOX
ATTORNEY GENERAL

Mr. T. R. Fehrenbach  
Chairman  
Texas Antiquities Committee  
P. O. Box 12276  
Austin, Texas   78711

Opinion No.   JM-958

Re:  Jurisdiction of the State Antiquities Committee over property held by an independent school district   (RQ-1404)

Dear Mr. Fehrenbach:

On behalf of the Texas Antiquities Committee you request advice on the authority of the committee to designate school district buildings as state archeological landmarks.  Your questions arise because of legal challenges to the committee's attempts to exercise its statutory authority over school district property.  See Texas Antiquities Committee v. Dallas County Community College District, 554 S.W.2d 924 (Tex. 1977).  We will review the committee's statutory authority and relevant case law before turning to your specific questions.

The committee is created by section 191.011 of the Natural Resources Code, and its powers and duties are set out in the Antiquities Code of Texas, sections 191.001 through 191.174 of that code.  See Nat. Res. Code § 191.001.  It "shall . . . determine the site of and designate landmarks . . . as provided in Subchapter D" of chapter 191 of the Natural Resources Code.  Nat. Res. Code § 191.051(b)(2).  Subchapter D provides that:

> [s]ites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest . . . that are located in, on, or under the surface of any land belonging to the State of Texas or to any county, city, or political subdivision of the state are state archeological landmarks and are eligible for designation.

Nat. Res. Code § 191.092(a).  A structure or building has historical interest if it:

(1) was the site of an event that has significance in the history of the United States or the State of Texas;

(2) was significantly associated with the life of a famous person;

(3) was significantly associated with an event that symbolizes an important principle or ideal;

(4) represents a distinctive architectural type and has value as an example of a period, style, or construction technique; or

(5) is important as part of the heritage of a religious organization, ethnic group, or local society.

Nat. Res. Code § 191.092(b).

Before the committee may designate a structure or building as a state archeological landmark, it must be listed on the National Register of Historic Places. Nat. Res. Code § 191.092(c); see 16 U.S.C. § 470(a). The committee is required to adopt rules establishing criteria for such designations and must consider "any and all fiscal impact on local political subdivisions" before it may designate as a state archeological landmark a building or structure owned by a political subdivision. Nat. Res. Code § 191.092(d), (e).

Landmarks designated under section 191.092 of the code "are the sole property of the State of Texas and may not be removed, altered, damaged, [or] destroyed . . . without a contract with or permit from the committee." Id. § 191.093. This provision has been the focus of conflicts between the committee's role in preserving the historical value of state archeological landmarks owned by school districts, see Attorney General Opinion JM-104 (1983), and the school district's interest in using, altering, or replacing its buildings to carry out its educational purposes. See Texas Antiquities Committee v. Dallas County Community College District, supra; cf. Board of Regents v. Walker County Historical Commission, 608 S.W.2d 252 (Tex. Civ. App. - Houston [14th Dist.] 1980, no writ) (building located on land administered by Board of Regents of the Texas State University System).

Texas Antiquities Committee v. Dallas County Community College District is the leading case on the authority of the Antiquities Committee and some of your questions are specifically based on it. In the Dallas County case, the Texas Supreme Court set aside an order of the Antiquities Committee denying the Dallas County Community College District a permit to demolish three buildings. The court was divided on both the reasoning and result of this case. An opinion of four judges ruled in favor of the community college district on the ground that a provision of the Antiquities Code was both unconstitutional and unconstitutionally applied, and that the permit denial was not supported by substantial evidence. The chief justice concurred on the basis of the substantial evidence rule and declined to reach any constitutional question. Four judges dissented.

The prevailing opinion of four judges determined that former section 6 of article 6145-9, V.T.C.S., the predecessor to section 191.092(a) of the Natural Resources Code, was unconstitutionally vague and lacked sufficient standards governing the delegation of legislative authority. The predecessor statute declared buildings and locations of historical, archeological, scientific, or educational interest located on lands of political subdivisions to be State Archeological Landmarks. The Antiquities Committee contended only that the Dallas buildings were "of historical interest." Neither the statute nor any rule gave this description more specificity or predictability, and the law did not include the explicit standards necessary to prevent arbitrary and discriminatory enforcement. 554 S.W.2d 924, at 928.

The same opinion also found the Texas Antiquities Act, formerly article 6145-9, V.T.C.S., unconstitutional as applied to the community college buildings because no substantial evidence supported the action of the Antiquities Committee. 554 S.W. 2d 924, at 928. The evidence was such that reasonable minds could not have reached the conclusion that the committee must have reached. Restoration of the buildings would require the diversion of public funds held in trust to benefit people in the school district. In addition, the buildings could not be restored except by spending an unreasonable amount of money, and even costly rebuilding would not make them usable for educational purposes. 554 S.W.2d 924, at 929.

In answer to the argument of the Antiquities Committee that a political subdivision has no contract or property rights protectable against the committee's powers, the

Mr. T. R. Fehrenbach - Page 4 (JM-958)

opinion pointed out that a state agency could not divest property and contract rights in violation of specific constitutional provisions. See Love v. City of Dallas, 40 S.W.2d 20 (Tex. 1931); Milam County v. Bateman, 54 Tex. 163 (1880).

We turn to your seven questions.

You first ask whether the committee's designation of a public school building as a state archeological landmark (SAL) would divert dedicated educational funds or property to non-educational purposes in violation of article VII, sections 3 and 6, of the Texas Constitution.

You ask as your second question whether the committee's denial of a school district's request for a permit to demolish a designated building would divert educational funds or property to non-educational purposes in violation of article VII, sections 3 and 6, of the Texas Constitution.

Article VII, section 3, of the constitution requires that certain tax revenues shall be used to support the "public free schools." See Attorney General Opinion H-961 (1977). Article VII, section 6, provides that lands granted to the counties for educational purposes are the property of the counties, with title thereto vested in the counties. The lands and proceeds generated by the sale thereof are to be held by the counties "as a trust for the benefit of public schools therein." See Attorney General Opinion JM-729 (1987).

The prevailing opinion in Texas Antiquities Committee v. Dallas County Community College District, in saying that constitutional prohibitions would restrain one state agency from divesting vested property and contract rights of another agency of the state, cited and discussed Love v. City of Dallas, supra, and Milam County v. Bateman, supra, cases relying on article VII, sections 3 and 6, respectively. In Milam County v. Bateman, the court stated that the state may not arbitrarily take school land from the county and give it to private parties. Milam County, 54 Tex. 163, at 166. In Love v. City of Dallas, the Supreme Court found violative of article VII, section 3, legislation which required a school district to use its funds to educate persons who did not reside in the district. The school funds and properties were held in trust by the city, school district, county, or other statutory agency to be used for the benefit of the school children of the community and the legislature could not devote them to any other purpose. Love, 40 S.W.2d 20, at 26. See also City of El Paso v. El

Paso Community College District, 729 S.W.2d 296 (Tex.  1986) (providing that article VIII, section 1-g(b), of Texas Constitution creates exception from article VII, section 3 prohibition against school tax funds being used for non-educational purposes).

We turn to your first question.  The designation of a school building as an SAL serves to retain the status quo and to subject the building to the committee's jurisdiction and to the permit requirement in section 191.093 of the Natural Resources Code. See Board of Regents v. Walker County Historical Commission, 608 S.W.2d 252 (Tex. Civ. App. - Houston [14th Dist.] 1980, no writ); Attorney General Opinion MW-378 (1981).  Thus, it is certainly possible that the designation of a building would not change the district's use of dedicated educational funds or property.  We cannot, however, rule out the possibility that on the facts of some cases the SAL designation will have the effect of making such a diversion, for example, by requiring the school to maintain a building that can no longer be used for educational purposes.

The answer to your second question will depend on the facts of the particular situation, and it cannot be answered in an Attorney General Opinion.  The court in Texas Antiquities Committee v. Dallas County Community College District indicated that a constitutional question would not have arisen if funds other than public school money had been available. 554 S.W.2d 924, at 928.  Moreover, on the facts of that case, the buildings could not have been made usable for educational purposes.  Different facts presumably could yield a different conclusion.

Your third question is as follows:

> Is the Committee's reading of the Dallas County case correct in that where funds not subject to the "public trust" are available, the SAL designation and ownership of the building's intrinsic value may not be disturbed absent a showing of unsuitability for educational purposes?

The Antiquities Committee had not designated any of the three buildings at issue in the Dallas County case as state archeological landmarks.  554 S.W.2d 924, at 926.  Before the Supreme Court issued its opinions in that case, this office read the statute itself to designate certain publicly-owned properties as state archeological landmarks. See Attorney General Opinions H-620 (1975); H-250 (1974).

Since the <u>Dallas County</u> case concerned the denial of a demolition permit, we will answer your question in terms of the committee's denying a permit to demolish a building.

We do not agree with your characterization of the supreme court's decision. Five judges agreed that "this particular determination of the Antiquities Committee is not supported by substantial evidence." 554 S.W.2d 924, at 931 (concurring opinion). This was the basis of the majority decision. The committee acted arbitrarily and without a sound basis with respect to the Dallas buildings, as shown by the reasons set out in the first opinion. <u>Id.</u> In addition to evidence on the issues you mention, the court cited evidence that the buildings could be restored only by complete reconstruction from the foundation up at a cost greater than new construction and that the outside walls might collapse if reconstruction were undertaken. Similar evidence, as well as facts not before the court in the <u>Dallas County</u> case, could be relevant to other exercises of the committee's permit power over SAL-designated school district buildings. As this office stated in Attorney General Opinion H-620 (1975), a site may be "of such slight historic interest and of such little utility" that denial of a permit would be an unreasonable and arbitrary exercise of the committee's power. Whether other actions with respect to school buildings are supported by substantial evidence must be determined on a case-by-case basis by an adjudicator with power to make fact-findings, and cannot be determined in an attorney general opinion.

Your fourth question is as follows:

> If the answer to one, two and/or three is no, then to what extent, if any, may the Committee constitutionally and statutorily subject public school properties to its jurisdiction?

To the extent that this question can be answered in the abstract, it has been answered in the discussion preceding your questions and the discussion of your first three questions.

Your fifth question is as follows:

> If a public school district allows a SAL designation of one of its properties, has the school district waived its right to assert the diversion principle in future proceedings (<u>i.e.</u>, demolition permit proceedings)?

The Antiquities Committee is subject to the Administrative Procedure and Texas Register Act, article 6252-13a, V.T.C.S., and the Natural Resources Code, section 191.021(a). A "contested case" under that Act includes a proceeding in which an agency decides whether or not to issue a permit. See V.T.C.S. 6252-13a, § 3(2), (3). Your request letter in fact states that the committee deals with requests for demolition of SALs as contested cases under the Administrative Procedure and Texas Register Act. See also Attorney General Opinion MW-378 (1981) (committee's decision in permit application cases will be tested under the substantial evidence rule). The Administrative Procedure and Texas Register Act gives parties to a contested case notice and an opportunity for hearing as well are a right to judicial review after exhaustion of administrative remedies. V.T.C.S. art. 6252-13a, §§ 13, 19.

You next ask whether the committee's denial of a demolition permit to a public school district constitutes an unconstitutional taking of property without compensation.

Article I, section 17, of the Texas Constitution provides in part:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . .

In Southern National Bank of Houston v. City of Austin, 582 S.W.2d 229 (Tex. Civ. App. - Tyler 1979, writ ref'd, n.r.e.), a case involving zoning of a privately-owned hotel as a historic landmark, the court held that the city imposed a servitude on property when it restricted the owners from reconstructing, altering, removing, or demolishing the building without a permit. Since the city made no provision for any compensation to the owners, the court held that there had been a "damaging" of the property for public use without adequate compensation in violation of article I, section 17, of the constitution. Id. at 238. Thus, designation of private property as a state archeological landmark or denial of a demolition permit for private property may invoke the requirement for adequate compensation in article I, section 17.

Article I, section 17, has generally been read, however, as applying to the taking, damaging, or destruction of private property. See, e.g., State v. Steck Co., 236 S.W.2d 866, 869 (Tex. Civ. App. - Austin 1951, writ ref'd). Public property may be taken for another public use if there

is express or implied legislative authority to do so, if the additional public use will not materially interfere with the existing use, or if the subsequent taking is for a public purpose of greater importance which cannot be accomplished in any other practical way. <u>Austin Independent School District v. Sierra Club</u>, 495 S.W.2d 878 (Tex. 1973); <u>Snellen v. Brazoria County</u>, 224 S.W.2d 305 (Tex. Civ. App. - Galveston 1949, writ ref'd n.r.e.). The committee has statutory authority to designate school buildings as SALs and to grant or deny demolition permits to the school district. If it exercises these powers in compliance with all applicable provisions of law, it will not damage or take property without compensation in violation of article I, section 17, of the Texas Constitution. Although it has been argued as a policy matter that governmental bodies should receive compensation when their property is taken, this view has not been adopted in Texas. <u>See</u> J. M. Payne, <u>Inter-governmental Condemnation as a Problem in Public Finance</u>, 61 Tex. Law Rev. 949 (1983).

Your last question is as follows:

> There being no regulatory standards concerning the approval or denial of <u>permits</u>, are the penal provisions of the Code uncon-stitutional on their face since the legisla-ture has delegated discretionary authority in this area without statutory standards?

Section 191.171 of the Natural Resources Code establishes a criminal penalty for violations of the provisions of chapter 191 of the code. It states in part:

> (a) A person violating any of the provisions of this chapter is guilty of a misdemeanor, and on conviction shall be punished by a fine of not less than $50 and not more than $1,000, by confinement in jail for not more than 30 days, or by both.

Nat. Res. Code § 191.171(a).

The Natural Resources Code provides that landmarks established under section 191.091 of the code may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee. Nat. Res. Code § 191.093. <u>See also</u> Nat. Res. Code § 191.095.

The committee "shall . . . consider the requests for and issue the permits provided for" in section 191.054 of

the Natural Resources Code.  Nat. Res. Code § 191.051(b)(4). Section 191.054 provides in part:

> (a)  The committee may  issue a permit  to other  state  agencies  or  political  sub-divisions or  to qualified  private  institu-tions, companies,  or  individuals  for  the survey and  discovery,  excavation,  demoli-tion, or restoration of  or the  conduct  of scientific or educational studies at, in,  or on  landmarks,  or   for  the  discovery  of eligible landmarks on  public land <u>if it  is the opinion of the committee that the  permit is in  the  best  interest of  the  State  of Texas</u>.

> (b)  Restoration shall be  defined as  any rehabilitation of a landmark excepting normal maintenance  or   alterations  to   nonpublic interior spaces.  (Emphasis added.)

Nat. Res. Code § 191.054.

Violations of administrative  rules and  orders may  be punishable by a  legislatively-established penalty.  <u>United States v. Gordon</u>, 580 F.2d  827 (5th Cir. 1978); <u>Harrington v. Railroad Commission</u>, 375  S.W.2d 892 (Tex. 1964); <u>Tuttle v. Wood</u>, 35 S.W.2d 1061 (Tex. Civ. App. - San Antonio  1931, writ ref'd).  Section 191.171 of the Natural Resources  Code establishes such a penalty.

An invalid administrative  order may  not, however,  be enforced by  a criminal  penalty.  Your  last question  thus raises the  issue  of  whether section  191.054  is  invalid because  it  lacks  regulatory  standards  concerning  the approval or denial of permits.

When  the  legislature  delegates  to  an  agency  the authority to  adopt  rules  and orders,  it  must  prescribe adequate standards  to  guide  the  discretion  it  confers. <u>Texas  Antiquities  Committee  v.  Dallas  County  Community College District</u>, <u>supra</u>; <u>Ex  parte Granviel</u>, 561 S.W.2d  503 (Tex. Crim. App. 1978); Tex. Const. art. II, § 1; art.  III, § 1.  The Antiquities Committee has been delegated  legisla-tive authority  to grant  permits, subject  to the  standard that, in the opinion of the committee, the permit is in "the best interest  of  the  State  of  Texas."  Nat.  Res.  Code § 191.054.  We must therefore  determine whether the  quoted language provides  a  sufficient  legislative  standard  to control the committee's exercise of discretion and to  guard

against arbitrary and unfair decisions on permit applications.

The standard, "in the best interest of the State of Texas," was included in the predecessor of section 191.054 when the Antiquities Code was adopted in 1969. Acts 1969, 61st Leg., 2d C.S., ch. 2, § 10, at 101. As adopted, the permit provision read in part as follows:

> The Antiquities Committee shall be authorized to issue permits to other state agencies or institutions and to qualified private institutions, companies, or individuals for the taking, salvaging, excavation, restoring, or the conducting of scientific or educational studies at, in, or on State Archeological Landmarks as in the opinion of the Antiquities Committee would be in the best interest of the State of Texas. (Emphasis added.)

Id. § 10.

This provision did not originally appear to contemplate the alteration or demolition of a public building which had been designated as a State Archeological Landmark. It was more relevant to activities such as salvaging or restoration that were consistent with the purpose of historical preservation set out in the code:

> It is the public policy and in the public interest of the State of Texas to locate, protect, and preserve all sites, objects, buildings, pre-twentieth century shipwrecks, and locations of historical, archeological, educational, or scientific interest . . . .

Nat. Res. Code § 191.002. Thus, in the context of the original Antiquities Code, the cited standard could be read together with the purpose clause to require the committee's permit decisions to serve the state's best interest relative to historical preservation. See, e.g., State Dept. of Revenue v. Adkinson, 409 So.2d 53, 57 (Fla. App. 1982) (in tax statute, "best interest of the public" refers to best interest of taxpayers of state); Application of Pribil, 139 N.W.2d 356, 358 (Neb. 1966) ("best interest" in statute relating to land transfers between two school districts means best educative interest).

Moreover, the adoption of the Antiquities Code was precipitated by the state's efforts to reclaim 16th century artifacts removed by a salvage company from a Spanish galleon which sank off the shore of Texas. Comment, <u>The Texas Antiquities Code: An Historical Commentary in a Contemporary Context</u>, 24 Sw. L. J. 326 (1970); Comment, <u>Texas Historic Landmarks - Criteria for Designation</u>, 11 St. Mary's L. J. 176 (1979). <u>See also Platoro, Ltd. v. Unidentified Remains of a Vessel</u>, 371 F. Supp. 351 (S.D. Tex. 1970), <u>supp</u>. 371 F. Supp. 356 (S.D. Tex. 1973), <u>rev'd on other grounds</u>, 508 F.2d 1113 (5th Cir. 1975) (<u>Platoro</u> I). The emergency clause of the bill adopting the code stated in part:

> The fact that irreparable damage and harm is rapidly being done to the archeological and historical heritage of the State of Texas and its citizens, and that historical and archeological sites, and treasures on public lands are without adequate legal protection and supervision and are being destroyed and damaged without lawful authority, create an emergency . . . .

Acts 1969, 61st Leg. 2d C.S., ch. 2, § 23, at 103.

Thus, the "best interest" standard was adopted by a legislature anxious to stop private interests from damaging the state's archeological and historical resources and imposed a duty on the committee to make permit decisions that would serve the state's interests in such resources. These circumstances also support the conclusion that the committees should make permit decisions that would serve the state's interests in such resources.

The "best interest" language has not changed, while other provisions of the Antiquities Code have been amended to acknowledge that other important public interests exist in the governmental functions carried out by political subdivisions. The committee must now consider "any and all fiscal impact" on a local political subdivision before designating a building or structure which it owns as a state archeological landmark. Nat. Res. Code § 191.092(e). <u>See also</u> Nat. Res. Code § 191.021(b) (procedure for considering educational purpose of higher education buildings in SAL designation). Moreover, now that section 191.054 expressly authorizes the committee to issue a demolition permit for a building previously designated as a state archeological landmark, the committee presumably has a duty to consider the applicant's reasons why such a building should be

demolished and not preserved.  The "best interest" standard, as originally understood, provides the committee little guidance when it has to reconcile the state's interest in historical preservation with a political subdivision's competing interest in controlling the use of its real property to carry out its own legislatively-imposed responsibilities.

In Texas Antiquities Committee v. Dallas County Community College District, the prevailing opinion of the supreme court included the following discussion of standards that should accompany the legislature's delegations of powers to state agencies:

> Depending upon the nature of the power, the agency, and the subject matter, varying degrees of specific standards have been required in testing the reasonable breadth of statutes.  1 Sutherland, Statutory Construction, § 4.05 (4th ed. 1975); Jordan v. State Board of Insurance, 160 Tex. 506, 334 S.W.2d 278 (1960).  Sound reasons support the rule that some reasonable standard is essential to the constitutionality of statutory delegations of powers to state boards and commissions.
>
> . . . [Quotation from Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972), deleted.]
>
> We adhere to the settled principle that statutory delegations of power may not be accomplished by language so broad and vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'

554 S.W.2d at 927-28.  The same opinion of the court considered the argument that administrative standards in the form of published rules could be substituted for statutory standards.  554 S.W.2d at 928 [discussing Davis, Administrative Law Treatise, § 2.16 (1st ed. 1970)].  The opinion stated that in the present case no standard or criteria by statute or rule provided safeguards for the affected parties.

As the Antiquities Code has been amended to deal with the legal questions that arose in the Dallas County case, the legislative intent underlying the code has changed to

acknowledge that public interests other than historical preservation may be relevant in particular permit application cases. The "best interest" standard is stated in language broad enough to incorporate the modifications in the legislative intent brought about by amendments to the Antiquities Code. See Schlichting v. Texas State Board of Medical Examiners, 310 S.W.2d 557 (Tex. 1958) (amendment and old law must be construed as harmonious whole). Relying on the argument raised in the Dallas County case, we believe the committee may adopt rules which amplify the "best interest" standard to give weight to the public interest of political subdivisions in controlling their resources as necessary to perform their constitutionally and legislatively imposed duties. The "best interest of the State of Texas" in a particular case could reasonably be an interest arrived at by weighing the public interest in preserving archeological resources against other important public interests served by the governmental entities which have custody of archeological resources.

Accordingly, we do not believe that section 191.054 must fall for lack of regulatory standards or that prosecutions under section 191.174 for violation of the permit requirements are impermissible. Whether any permit denial is a valid agency action and whether any individual is guilty of a violation under section 191.174 must be determined on a case-by-case basis in an appropriate forum.

## S U M M A R Y

Designation by the State Antiquities Committee of a school building as a state archeological landmark could divert dedicated education funds or property to non-educational purposes in violation of article VII, sections 3 and 6, of the Texas Constitution, depending on the facts of the particular case. Whether the committee's denial of a school district's request for a permit to demolish a designated building would cause such a diversion of educational resources would have to be decided on a case-by-case basis, considering the facts of each particular situation, and subject to review by the courts for substantial evidence to support the committee's decision. The committee's decisions in permit application cases are contested cases under the Administration Procedure and Texas Register Act and the applicants for permits have a right under

that statute for judicial review of the committee's decision.

The committee's denial of a demolition permit to a school district does not constitute an unconstitutional taking of property without compensation in violation of article I, section 17, of the Texas Constitution.

Section 191.054 of the Natural Resources Code, which authorizes the committee to issue a demolition permit for state archeological landmarks if "it is the opinion of the committee that the permit is in the best interest of the State of Texas," is not invalid for lack of standards to guide the committee's exercise of delegated legislative power. The "best interest" standard may be made more specific by reading it in reference to other provisions of the Antiquities Code which evidence the legislature's intent for exercise of the committee's permit power.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General